IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEWART MANAGO,

        Plaintiff,                No. 2:07-cv-2290 LKK KJN P

    vs.

BRAD WILLIAMS, et al.,           ORDER and

        Defendants.        FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding without counsel and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.  This action was reassigned to the undersigned on February 9, 2010.[1]

        Plaintiff is proceeding on an amended complaint, filed November 26, 2008 (Dkt. No. 20), against individual defendants employed at California State Prison-Sacramento ("CSPS" or "CSP-S"), and the Office of Internal Affairs (Northern Region) ("OIA") of the California Department of Corrections and Rehabilitation ("CDCR").[2]  Plaintiff filed his complaint and

---

[1]  This action is referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Local General Order No. 262, and E.D. Cal. L.R. ("Local Rule") 302.

[2]  By order filed May 12, 2009, this court found service of the amended complaint appropriate upon Brad Williams, Jim Chapman, R. Hill, S. Vance, S. Shannon, B. Joseph, C. Gold, R. Garcia, J. Tenseth, J. Wachter, R. Marrow, W. S. Laffitte, Mary Brockett, M. Jaffe, K.

amended complaint while incarcerated at CSPS; plaintiff is presently incarcerated at California

Correctional Institution, Tehachapi.

Presently pending before the court are the following matters:  (1) motion to

dismiss filed by defendants Garcia, Tenseth, Wachter, Marrow, Jaffe, Kelly, Martin, Stabbe,

Williams, Chapman, Hill, Vance, Shannon, Joseph, and Gold (Dkt. No. 35), joined by defendant

Brockett (Dkt. No. 53); (2) motion to dismiss filed by defendant Brockett (Dkt. No. 53);

(3) plaintiff's motions for sanctions (Dkt. Nos. 44, 77); (4) plaintiff's motion for judicial

intervention (Dkt. No. 49); (5) plaintiff's motions for protective order (Dkt. Nos. 59, 60); and

(6) plaintiff's motion for court-ordered confidential calls (Dkt. No. 71).

I.  BACKGROUND

The amended complaint alleges that plaintiff was transferred to CSP-S on June 1,

2000, for the express purpose of facilitating his mental health treatment.[3]  (Dkt. No. 20, at 4.)

The gravamen of the complaint is that in 2003 CSP-S prison officials mishandled plaintiff's

complaints of sexual misconduct by correctional officer Mary Brockett, relied on plaintiff to

execute a sting operation against Brockett and to participate in an internal affairs investigation

that resulted in Brockett's dismissal, then retaliated against plaintiff for his participation therein,

including denying him adequate mental health treatment.  The amended complaint alleges causes

of action for use of excessive force, retaliation, deliberate indifference to plaintiff's mental health

needs, failure to investigate plaintiff's complaints of sexual misconduct and to protect him

---

Kelly, J. Martin, and H. Stabbe.  (Dkt. No. 24, at 2.)

[3]   Plaintiff has a long history of mental health problems that preceded his transfer to
CSP-S, of which staff arguably should have been aware.  For example, among plaintiff's exhibits
filed in opposition to defendants' motions to dismiss is the April 2000 discharge report of Pelican
Bay State Prison psychologist William Grimes, pursuant to "evaluation prior to [plaintiff's]
transfer to CSP, Sacramento."  (Dkt. No. 38-2, at 30.)  The report chronicles plaintiff's
developmental, social, educational, mental health and medication history, notes that plaintiff
"now has trusting relationships with several correctional officers as well as [Dr. Grimes] and his
treating psychiatrist," but opines that plaintiff's transfer to CSP-S was "necessary for therapeutic
progress to continue."  (Id. at 32, 33.)

1   accordingly, and failure to provide adequate supervision of correctional and mental health staff.

2   (Dkt. No. 20, at 18-20.)  Plaintiff seeks damages, costs and attorneys' fees.  (Id. at 20.)

3   II.  MOTIONS TO DISMISS

4         A.  STATUTE OF LIMITATIONS

5         While the other defendants waived service of process (Dkt. No. 37) and timely

6   appeared in this action pursuant to their motion to dismiss filed November 6, 2009 (Dkt. No. 35),

7   defendant Mary Brockett was personally served process on November 18, 2009 (Dkt. No. 40),

8   rendering her answer due on or before December 9, 2009.  See Fed. R. Civ. P. 12(a)(1)(A)(I).

9   Brockett did not file her answer until January 8, 2010 (Dkt. No. 51), and on January 14, 2010,

10  filed an untimely motion to dismiss requesting that she be joined in the other defendants' motion

11  to dismiss, along with her further contention that plaintiff's claims against her are barred by the

12  applicable statute of limitations (Dkt. No. 53).

13        Plaintiff responded with an untimely opposition (Dkt. No. 77),[4] pursuant to which

14  he also seeks monetary sanctions ($250) against Brockett's attorney for "attempting to 'mislead'

15  the court. . ." (id. at 3).

16        The court accepts *nunc pro tunc* the filings of both plaintiff and defendant

17  Brockett.  The court separately addresses Brockett's statute of limitations contention before

18  addressing the shared contention of all defendants that plaintiff has failed to exhaust his

19  administrative remedies.

20        1.  LEGAL STANDARDS

21        "Dismissal on statute of limitations grounds can be granted pursuant to Fed. R.

22  Civ. P. 12(b)(6) 'only if the assertions of the complaint, read with the required liberality, would

23  not permit the plaintiff to prove that the statute was tolled.'  Vaughan v. Grijalva, 927 F.2d 476,

24

25        [4]  Although the certificate of service filed contemporaneously with Brockett's motion to dismiss indicates that plaintiff was served with it by mail on January 8, 2010 (Dkt. No. 52), plaintiff states without explanation that he did not receive a copy of the motion until April 7, 2010 (Dkt. No. 77, at 2).

26

1  478 (9th Cir. 1991) (quoting <u>Jablon v. Dean Witter & Co.</u>, 614 F.2d 677, 682 (9th Cir. 1980)).”

2  <u>TwoRivers v. Lewis</u>, 174 F.3d 987, 991 (9th Cir. 1999).  “On a motion to dismiss for failure to

3  state a claim [pursuant to Fed. R. Civ. P. 12(b)(6)], the court must presume all factual allegations

4  of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party.”

5  <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987) (citation omitted).

6      2.  <u>ANALYSIS</u>

7      Seeking to dismiss plaintiff’s first cause of action (alleging excessive force by

8  Brockett in violation of the Eight Amendment), Brockett contends that plaintiff filed his

9  complaint after expiration of the two-year limitations period applicable to federal civil rights

10  actions filed in California, even if tolling is permitted for the period during which plaintiff

11  exhausted his administrative remedies.  However, defendant fails to consider further tolling

12  accorded prisoners and thus, for the reasons explained below, the court finds that plaintiff’s civil

13  rights claim against Brockett was timely filed.

14      Section 1983 does not contain a statute of limitations.  Rather, federal courts

15  apply the forum state’s statute of limitations for personal injury actions, as well as the forum

16  state’s law regarding tolling.  <u>Wilson v. Garcia</u>, 471 U.S. 261, 275 (1985); <u>Hardin v. Straub</u>, 490

17  U.S. 536, 537-39 (1989); <u>Fink v. Shedler</u>, 192 F.3d 911, 914 (9th Cir. 1999); <u>Jones v. Blanas</u>,

18  393 F.3d 918, 927 (9th Cir. 2004).  Effective January 2003, California’s statute of limitations for

19  personal injury actions is two years.  Cal. Civ. Proc. Code § 335.1.  Additionally, under

20  California law, this statute of limitations is tolled for a period of two years for persons

21  imprisoned for a term less than life.[5]  Cal. Civ. Proc. Code § 352.1.  Moreover, the statute of

22

23      [5] It does not appear that plaintiff is serving a life sentence.  Review of relevant court
documents indicates that plaintiff was initially sentenced in Superior Court in 1988 to a prison
24  term of 19 years based on convictions for burglary, robbery and rape.  <u>See</u> Petition for Writ of
Habeas Corpus, Case 3:03-cv-01963-W-BEN (S.D. Ca. 2003) (Dkt. No. 1, at 2-3.)  While
25  serving that sentence, in October 1993 plaintiff was sentenced to an additional term of 11 years
based on a conviction of aggravated assault by a prisoner with a weapon.  <u>See</u> <u>Manago v. Walker</u>,
26  Case 2:08-cv-02857 GEB DAD P (Dkt. No. 1 at 1; Dkt. No. 15 at 2).

limitations for a federal civil rights claim is tolled while a prisoner completes the administrative

grievance process deemed mandatory by the Prison Litigation Reform Act,  42 U.S.C. § 1997e

(a).  Porter v. Nussle, 534 U.S. 516, 524 (2002); Brown v. Valoff, 422 F.3d 926, 943 (9th Cir.

2005).

Although a federal court looks to the forum state to determine the applicable

statute of limitations, federal law determines when a civil rights claim accrues and thus when the

statute of limitations begins to run.  Elliott v. City of Union City, 25 F.3d 800, 801-02 (9th

Cir.1994); Morales v. City of Los Angeles, 214 F.3d 1151, 1153-54 (9th Cir. 2000).  "Under

federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which

is the basis of the action."  Maldonado v. Harris, 370 F.3d 945, 955 (9th Cir. 2004).

According to the allegations in the amended complaint, read in tandem with

plaintiff's administrative appeals, plaintiff knew of defendant Brockett's alleged excessive force

against him commencing December 11, 2003.  See Amended Complaint (Dkt. No. 20, at 5, 6);

(see also, id. at 8 (alleging unwanted advances by Brockett from "late, December 2003, to

January 17, 2004")); see also, Grannis Decl., Exh. C (Dkt. No. 35-2, at 23, 27) (602 Appeal, IAB

Case No. 0400629, Local Log No. SAC 04-00946, referencing December 11 & 18, 2003).

Thus, pursuant to the two-year statute of limitations, coupled with the two-year

tolling period accorded prisoners serving a term less than life, plaintiff had until December 11,

2007 to file this action.  Cal. Civ. Proc. Code §§ 335.1, 352.1.  Additional tolling is warranted for

the period during which plaintiff exhausted his administrative remedies, viz., from May 11, 2004

to October 12, 2004 (154 days).[6]  Therefore, the deadline for filing the instant action as to

plaintiff's first cause of action against defendant Brockett was May 13, 2008.  Plaintiff timely

////

---

[6] Plaintiff pursued his administrative remedies regarding these allegations (designated
Log No. 04-00946) from May 11, 2004 (602 appeal), to October 12, 2004 (Director's response),
a total of 154 days.  See Grannis Decl., Exh. C (Dkt. No. 35-2, at 21-33).

1  filed the instant action on October 23, 2007. [7]  Accordingly, the court finds that this action was

2  timely filed as to defendant Brockett, whose separate motion to dismiss should be denied.

3         Plaintiff's related motion for sanctions against defendant Brockett's counsel for

4  "attempting to 'mislead' the court" (Dkt. No. 77) is without merit.  Counsel's advocacy and

5  arguments thereto, while rejected by the court, do not demonstrate a failure to comply with the

6  rules or orders of this court.  <u>See</u> Local Rule 110  ("Failure of counsel or of a party to comply

7  with these Rules or with any order of the Court may be grounds for imposition by the Court of

8  any and all sanctions authorized by statute or Rule or within the inherent power of the Court.").

9  Therefore, plaintiff's motion will be denied.

10       B.  <u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>

11         All defendants contend that the majority of plaintiff's claims should be dismissed

12  due to plaintiff's failure to exhaust administrative remedies.[8]  The court has reviewed all of the

13  documents for each of plaintiff's administrative appeals and finds that they together demonstrate

14  the administrative exhaustion of plaintiff's first cause of action for excessive force against

15  defendant Brockett; second cause of action for retaliation against defendants Vance, Kennedy,

16  Williams, Chapman, Shannon, Joseph, Garcia, Tinseth, Wachter, Morrow, Hill and Gold; third

17  

18      [7]  Although the docket indicates that plaintiff filed this action on October 26, 2007, he
19  signed it and delivered it to prison officials on October 23, 2007.  <u>See</u> Dkt. No. 1 at 83.  Pursuant
to the "mailbox rule," the latter is considered the filing date of the petition.  <u>See</u> <u>Stillman v.</u>
20  <u>Lamarque</u>, 319 F.3d 1199, 1201 (9th Cir. 2003).

21      The court need not, therefore, address plaintiff's alternate contentions concerning the stay
of this action pending the court's dismissal of another of plaintiff's cases, <u>Manago v. Knowles</u>,
22  Case No. 2:04-cv-01712 FCD DAD P (presenting similar claims, including those against
defendant Brockett), which was filed on August 20, 2004 (<u>id.</u>, Dkt. No. 1), and dismissed for
23  failure to exhaust administrative remedies on August 29, 2008 (<u>id.</u>, Dkt. No. 95).  A stay was
imposed in the instant action from May 23, 2008 (Dkt. No. 7, at 3) until April 6, 2009 (Dkt. No.
24  21), pending conclusion of Case No. 2:04-cv-01712 FCD DAD P.

25      [8]  Defendants also contend that "plaintiff's conclusory allegations must be dismissed
pursuant to Fed. R. Civ. P. 8."  ((Dkt. No. 35, at 12-13.)  At this juncture the court will not parse
26  the factual allegations of the complaint as defendants request; this goal may be pursued through a
subsequent motion for summary judgment or at trial.

1  cause of action for deliberate indifference against defendants Vance, Kennedy, Williams,

2  Chapman, Kelly, Jaffe and Martin; fourth cause of action for failure to protect against defendants

3  Vance, Williams, Chapman, Kelly, Jaffe and Martin; and fifth cause of action for failure to

4  supervise against defendants Vance, Williams, Chapman, Kelly, Jaffe, Shannon, Joseph, Hill and

5  Gold.

6     1.  LEGAL STANDARDS

7     The Prison Litigation Reform Act ("PLRA") provides that, "[n]o action shall be

8  brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by

9  a prisoner confined in any jail, prison, or other correctional facility until such administrative

10  remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Pursuant to this rule, prisoners

11  must exhaust their administrative remedies regardless of the relief they seek, i.e., whether

12  injunctive relief or money damages, even though the latter is unavailable pursuant to the

13  administrative grievance process.  Booth v. Churner, 532 U.S. 731, 741 (2001).  Moreover, such

14  exhaustion requires that the prisoner complete the administrative review process in accordance

15  with all applicable procedural rules (e.g., deadlines).  Woodford v. Ngo, 548 U.S. 81 (2006).

16     The United States Supreme Court has provided a detailed summary of the process

17  for filing and reviewing prisoner grievances within California (Woodford, supra, 548 U.S. at 85-

18  86).  "The level of detail in an administrative grievance necessary to properly exhaust a claim is

19  determined by the prison's applicable grievance procedures."  Jones v. Bock, 549 U.S. 199, 218

20  (2007).  In California, prisoners are required to lodge their administrative complaint on a CDC

21  Form 602 which in turn requires only that the prisoner "describe the problem and action

22  requested."  Cal. Code Regs. tit. 15, § 3084.2(a).  In Griffin v. Arpaio, 557 F.3d 1117 (9th Cir.

23  2009), adopting the standard enunciated in Strong v. David, 297 F.3d 646 (7th Cir. 2002), the

24  Ninth Circuit held that "when a prison's grievance procedures are silent or incomplete as to

25  factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which

26  redress is sought.'"  Griffin, 557 F.3d at 1120 (reviewing Arizona procedures), quoting Strong,

297 F.3d at 650.  "A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved.  A grievance also need not contain every fact necessary to prove each element of an eventual legal claim.  The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation."  Griffin, 557 F.3d at 1120; accord, Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010) (California grievance procedures).

Further, absent an express requirement to the contrary (which does not exist in the California prison grievance process), "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances."  Jones, 549 U.S. at 219.  It is nonetheless appropriate to require that a prisoner demonstrate, through the administrative grievance process and consistent with the PLRA, that he has standing to pursue his claims against a particular defendant.  "[A]t an irreducible minimum, Art[icle] III [of the United States Constitution] requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'"  Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982) (quoting Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 99 (1979).

The PLRA requires that these administrative remedies be exhausted prior to filing suit.  McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).  The exhaustion requirement applies to all section 1983 claims regardless whether the prisoner files his claim in state or federal court.  Johnson v. Louisiana ex rel. Louisiana Dept. of Public Safety and Corrections, 468 F.3d 278 (5th Cir. 2006).  Significantly, however, this exhaustion requirement is not jurisdictional but an affirmative defense that may be raised by a defendant in a Rule 12(b) motion to dismiss.  See Jones, 549 U.S. at 216 ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th Cir. 2003) (failure to exhaust is an affirmative defense).  Defendants bear the burden of raising and proving the

absence of exhaustion, and their failure to do so waives the defense.  Id. at 1119.

"In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact."  Wyatt, 315 F.3d at 1119.  "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust – a procedure closely analogous to summary judgment – then the court must assure that [the prisoner] has fair notice of his opportunity to develop a record."  Id. at 1120, n. 14.  However, when the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice."  Id. at 1120; see also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005) ("mixed" complaints may proceed on exhausted claims).  Thus, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad."  Jones, 549 U.S. at 221.

## 2.  ANALYSIS OF THE ADMINISTRATIVE APPEALS

Defendants have submitted the declaration of N. Grannis, Chief of the Inmate Appeals Branch, California Department of Corrections.  (See Dkt. No. 35-2.)  Grannis states that in response to a September 2009 request from defendants' counsel, he researched California's inmate appeals record system to access all appeals filed by plaintiff against the defendants served in this action.  (Id. at 4, ¶ 8.)  Of the twenty-six appeals filed by plaintiff, Grannis identified six "that involved allegations and/or individuals" presented in the instant action, and has provided copies of the original documents.  (Id. at 5, ¶ 9, and 8-33.)

a.  Internal Affairs Bureau ("IAB") Case No. 0307257 (Local Log No. SAC 03-02823)

On December 14, 2003, plaintiff filed a 602 appeal against "Correctional Captain S. Vance, and other employees, who participated in the December 10, 2003, holding cell extraction of inmate/patient Manago. "  (Dkt. No. 35-2 at 15.)  The grievance alleges that despite the statements of Correctional Officer ("CO") Kennedy and Dr. Fishman that plaintiff had been

1  accepted for mental health treatment in the "OHU" (Outpatient Housing Unit), and plaintiff's

2  threats of suicide if he was placed in Ad-Seg (Administrative Segregation), Vance used unlawful

3  influence on other employees to extract plaintiff from his cell, deny his request for suicide

4  intervention and place him in Ad-Seg.  Plaintiff requested that an investigation be conducted and

5  that he be provided all relevant documents.  (Id. at 15-17.)

6          Administrative review was bypassed at the informal and first formal levels,[9] and

7  the request partially granted at the second formal level of review on December 18, 2003, based

8  on referral or investigation.  (Id. at 16, 18.)  Although further investigation was later deemed

9  unwarranted at the second level (id. at 18), the Director's response at the third level of review,

10 issued April 8, 2004, noted a continuation of the investigation of plaintiff's complaint "alleg[ing]

11 staff misconduct on the part of Correctional Captain Vance . . . by denying him [plaintiff] proper

12 access to mental health care."  (Id. at 14.)

13         While plaintiff administratively exhausted this claim, defendants now contend

14 that plaintiff's failure to reference his "cell extraction" in his amended complaint renders this

15 grievance irrelevant to the allegations of the complaint.  Plaintiff does not expressly contend

16 otherwise in his opposition to defendants' motion to dismiss.  However, these allegations are

17 generally relevant to plaintiff's third cause of action against Vance (and others) for deliberate

18 indifference to plaintiff's serious mental health needs, and possibly plaintiff's second cause of

19 action for retaliation.  Accordingly, plaintiff's failure to reference his December 2003 "cell

20 extraction" provides insufficient grounds for dismissing any portion of plaintiff's amended

21 complaint.

22         b.  IAB Case No. 0400629 (Local Log No. SAC 04-00946)

23         On May 11, 2004, plaintiff filed a 602 appeal alleging sexual misconduct by

24 Correctional Officer Mary Brockett, in violation of Cal. Code Regs. tit. 15, § 3401.5.  (Dkt. No.

25 
        ───────────────────
26      [9]  The informal and first formal levels of review may be bypassed by the Appeals
     Coordinator in certain circumstances.  Cal. Code. Regs., tit 15, § 3084.5(b).

35-2, at 23, 27.)  The grievance states that an investigation was initiated by correctional officers

at CSP-S on December 11, 2003, and by the Office of Internal Affairs ("OIA") on December 18,

2003.  Plaintiff references his "long history of suffering from Major Mental Illness," that he had

been previously incarcerated at Pelican State Prison "for therapeutic reasons," and that on

January 31, 2001, plaintiff's "SHU term was suspended and [he] was released to the CSP-SAC

prison, and assigned to . . . the Mental Health EOP [Enhanced Outpatient Program ] program."

(Id., at 27.)  The grievance states that upon plaintiff's "arrival to EOP-Program his psychiatric

symptoms was (sic) stabilized with anti-psychotic medications, and some psychotherapeutic

intervention with counseling by psychiatric staff."  (Id.)  Thereafter, plaintiff allegedly "became

the victim of Sexual Harassment and Sexual Assault" by defendant Brockett who "was only able

to maniplate appellant for her own sexual gratification because appellant was under a lot of

psychiatric medications (sic)."  (Id.)  Plaintiff further alleged that Brockett "and other staff"

thereafter conspired to retaliate against plaintiff "for providing some information regarding this

matter," as evidenced by an attached declaration of inmate Brian Hackett dated May 7, 2004,

which provides that he "was told to deliver a message to [plaintiff] from Captain Vance and Ms.

P. Kennedy," specifically:

> They said they would make sure I was placed where you were at Salinas Valley
> and tell you that if you get at that bitch from the kitchen again or try to make
> further problem for her by testifying against her, it's gonna be all bad for you
> folks. [¶ ] They gonna send somebody to kill you or you kill them either way you
> will never see day light or the streets again.  So whatever it is you got going on
> folks, you need to drop it or watch your back.

(Dkt. No. 35-2. at 30, 29.)  Plaintiff's grievance asserts that "[a]s a direct result of Correctional

Officer Mary Brockett's Sexual Misconduct appellant has been very paranoid, and denied proper

Mental Health Treatment . . . [has] been threatened and injuryed (sic) mentally and emotionally

in his life and well being placed in unlawful jeapardy . . . Appellant Manago is entitled to proper

mental health care by prison officials . . . Appellant continue[s] to suffer the cruelties with

foreseeable and expectant permanent and lasting actual injuries, including the deprivation and

1   aggravation of appellant's serious mental disorders.  Correctional Officer M. Brockett, have (sic)

2   markedly shown a deliberate indifference to appellant's serious mental health illnesses and

3   needs." (Id. at 27.)   The relief sought by plaintiff was a request that Brockett be tested for

4   sexually transmittable diseases and that plaintiff be provided copies of all related investigative

5   reports.  (Id. at 23.)

6          Administrative review was bypassed at the informal and first formal levels.  (Id. at

7   23-24.)  Plaintiff's requests for relief were denied at the second formal level of review on June

8   22, 2004.  In a letter written by defendant Brad Williams, Special Agent-In-Charge at the Internal

9   Affairs Office – Northern Region, Williams explained that plaintiff had been a "voluntary

10  participant" in the Internal Affairs' investigation of Brockett, which resulted in her termination;

11  that as a result of the termination CDC could not order that Brockett obtain any testing, and that

12  California regulations dictated that plaintiff have no access to departmental investigative reports.

13  (Id. at 25-26.)   However, Williams further stated that plaintiff's allegations of retaliation by "CO

14  Brockett and other staff" was "currently under review." (Id. at 26.)  The letter rejected plaintiff's

15  complaints of inadequate mental health treatment, indicating that such complaints needed to be

16  set forth in a separate grievance.[10]  (Id.)

17          Plaintiff's response, filed in July 2004, is mostly illegible, but appears to assert his

18  dissatisfaction with the second level response, alleges further retaliatory placements in response

19  to his testimony against Brockett, and that he "was so stress[ed] out" that he took an overdose on

20  June 28, 2004.  (Dkt. No. 35-2, at 24.)   The Director's Level response, issued October 12, 2004,

21  denied plaintiff's appeal on the ground that "the primary complaint against CO Brockett has been

22

23          [10]  These instructions provided in full (Dkt. No. 35-2, at 26):

24          Your complaint regarding you being denied proper mental health treatment is very
            vague and you did not describe the problem and action requested in sections A
            and B of the CDC-602.  You need to submit another CDC-602 and address your
25          specific concerns to the appeals coordinator of the affected institution, regarding
            this specific complaint.  The coordinator will screen and categorize the appeal.
26          Appropriate personnel will then be designated to investigate your complaint.

1   resolved and closed," while the "secondary allegation of threats of reprisal has been actively

2   pursued and the investigation remains open." (Id. at 22.)  The response further provided:  "Upon

3   completion of final review, or culmination of an investigation, the appellant will be notified by

4   the investigative body that an inquiry was completed and whether the complaint was

5   unsubstantiated or substantiated.  The request for release of information from an ex-employee's

6   personnel file is beyond the scope of the appeals process.  CDC has no jurisdiction over ex-CO

7   Brockett to compel a blood test." (Id.)

8           Plaintiff's 602 appeal demonstrates administrative exhaustion of plaintiff's first

9   cause of action against defendant Brockett for use of excessive force in violation of the Eighth

10  Amendment. (Dkt. No. 20, at 18.)[11]  It also demonstrates exhaustion of plaintiff's second cause

11  of action against defendant Vance for retaliation,[12] and third cause of action against Vance for

12  ////

13

_____

14      [11] Plaintiff's explicit statements of Brockett's alleged sexual conduct toward plaintiff
    (see, e. g., Dkt. No. 20, at 8-9) support his claim under the Eighth Amendment's ban against
15  cruel and unusual punishment.  "Whether a particular event or condition in fact constitutes 'cruel
    and unusual punishment' is gauged against 'the evolving standards of decency that mark the
16  progress of a maturing society.'" Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000),
    quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992), and Rhodes v. Chapman, 452 U.S. 337, 346
17  (1981).  The Eighth Amendment right of a prisoner to be free from sexual abuse is clearly
    established. Schwenk, 204 F.3d at 1197.  Unsolicited sexual conduct is not among the penalties
18  which criminal offenders should be required to pay. Women Prisoners of the Dist. of Columbia
    Dept. of Corrections, 877 F.Supp. 634, 665 (D.D.C. 1994) (citing Farmer v. Brennan, 511 U.S.
19  825, 834 (1994)), aff'd in part and vacated in part, 93 F.3d 910 (D.C. Cir. 1996).  "[N]o lasting
    physical injury is necessary to state a cause of action.  Rather, the only requirement is that the
20  officer's actions be 'offensive to human dignity.'" Schwenk, 204 F.3d at 1197, quoting Felix v.
    McCarthy, 939 F.2d 699, 702 (9th Cir.1991) (fn. omitted).

21

22      [12] "[A] viable claim of First Amendment retaliation entails five basic elements:  (1) An
    assertion that a state actor took some adverse action against an inmate (2) because of (3) that
23  prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First
    Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."
24  Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).  Moreover, direct and tangible harm will
    support a First Amendment retaliation claim even without demonstration of chilling effect on the
25  further exercise of a prisoner's First Amendment rights. Id. at 568, n. 11.  "[A] plaintiff who
    fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm"
26  as a retaliatory adverse action. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009), citing
    Rhodes, 408 F.3d at 568, n. 11.

deliberate indifference.[13]   The appeal further demonstrates exhaustion of plaintiff's second and

third causes of action against defendant Kennedy, for whom service of process has not yet been

ordered.  Defendant Williams' direct role in allegedly discrediting this administrative appeal, as

well as his alleged underlying role (and that of OIA Agent Jill Chapman) in the internal

investigation of Brockett relative to their "utilization" of plaintiff (see Dkt. No. 20, at 5-8),

demonstrates exhaustion of plaintiff's second and third causes of action against Williams and

Chapman.  This administrative appeal also demonstrates exhaustion of plaintiff's fourth cause of

action, failure to protect,[14] against defendants Vance, Williams and Chapman.  Finally, while the

supervisory roles of these defendants has not been fully explicated,[15] this administrative appeal

---

[13]   The administrative appeal was sufficiently detailed, at least as initially framed by plaintiff, to demonstrate exhaustion of plaintiff's claim for deliberate indifference to his mental health needs.  The Eighth Amendment protects prisoners from cruel and unusual punishment, which includes the denial of medical care.  Estelle v. Gamble, 429 U.S. 97, 102-03 (1976).  "To set forth a constitutional claim under the Eighth Amendment predicated upon the failure to provide medical treatment, first, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted).  The second prong requires both (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.  Id.  Deliberate indifference thus requires an objective risk of harm and a subjective awareness of that harm."  Conn v. City of Reno, 591 F.3d 1081, 1094-95 (9th Cir. 2010) (internal quotations and punctuation omitted) (also citing Farmer, 511 U.S. at 837).  "[A] prisoner has a 'serious' medical need if the failure to treat the condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'  A heightened suicide risk or an attempted suicide is a serious medical need."  Id. at 1095 (citations omitted).

[14]   A deliberately indifferent failure to protect an prisoner's safety is a violation of the prisoner's Eighth Amendment rights.  Farmer, 511 U.S. at 831.  "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health, and it does not matter whether the risk comes from a single source or multiple sources . . ."  Id. at 843 (citation and internal quotations omitted).  "Because . . . prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment, it remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety."  Id. at 844.

[15]   The amended complaint identifies these defendants' supervisory roles as follows: Vance as "Facility Captain, as CSP-Sacramento," Williams as "Speical (sic) Agent, In charge of the Office of Internal Affairs-Northern Region," and Chapman as "former Special Agent, at the Office of Internal Affairs-Northern Region."  (Dkt. No. 20, at 3.)  Chapman, like Williams, is alleged to have directed the investigation and sting operation against Brockett.

1  alleges direct constitutional violations by these defendants sufficient to allow this case to go

2  forward on plaintiff's fifth cause of action, failure to supervise.[16]

3              c. IAB Case No. 0515216 (Local Log No. SAC 06-00783)

4              On March 26, 2006, plaintiff filed a 602 appeal requesting that CSP-S prison

5  officials and mental health staff transfer plaintiff to Atascadero State Hospital ("ASH") for

6  "optimal [mental health] treatment," based on plaintiff's allegations that he had been diagnosed

7  with "a post-traumatic stress disorder amongst other disorders," that he had been the victim of

8  sexual assault by CO Brockett while housed at CSP-S, and that his cooperation in OIA's

9  investigation of Brockett had resulted in "retaliation and retribution" including false rule

10  violations and illegal placement in administrative segregation.  (Dkt. No. 35-3 at 4, 6.)  Plaintiff

11  described his symptoms as follows (id. at 6):

12          Appellant continue[s] to experience significant stress and anxiety as a result of the
            incidents surrounding his past events of sexual abuse and ongoing events of
13          retaliation and retribution by some custody and mental health staff; since
            appellant's arrival back to CSP-SAC it has been extremely stressful
14          circumstances, due to appellant hearing unwanted voices and feeling depressed
            and paranoid.  Appellant is continuing to have unwanted flash backs of these acts
15          of sexual (sic) by former officer Mary Brockett.  Appellant continue[s] to have
            nightmares, vomiting and rage.  Appellant can not talk about his the (sic) sexual
16          abuse, due to custody staff ongoing violations of appellant's confidential patient
            rights.

17

18              Informal and first formal level review were bypassed.  (Id. at 4.)  Staff

19  psychologist and defendant J. Martin, Ph.D., interviewed plaintiff and in a First Level Appeal

20  Response dated May 8, 2006, concluded in pertinent part that plaintiff was ineligible for

21  placement at Atascadero State Hospital due to his institutional history, including placement in

22  maximum custody, risk of escape (noting a "Walk Away in 1978"), and a charge in 2005 while at

23

24          [16]  To prevail on a claim for "supervisory liability" under § 1983, a plaintiff must prove
      that the supervisor was either personally involved in the constitutional violation, or that there was
25      a concrete causal connection between the supervisor's wrongful conduct and the constitutional
      violation.  Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001) (citations omitted).  Supervisory
26      officials may not be held liable for the actions of subordinates on a theory of vicarious liability.
      Id.

1   High Desert State Prison for Conspiracy to Murder a Peace Officer.  (Id. at 8.)  Dr. Martin did not

2   reference plaintiff's request for more "optimal" mental health treatment.

3           In response, plaintiff stated that he was "dissatisfied because No. 1 it appears that

4   Dr. Martin and other CSP-SAC staff are attempting to downplay the seriousness of appellant's

5   mental health problems following the sexual abuse of former officer Mary Brockett . . . while

6   [plaintiff was] confined in CSP-SAC EOP-Program."  (Id. at 5, 7.)   Plaintiff noted that "CDCR

7   officials ha[ve] subjected appellant to a series of retaliatory acts, including false CDCR Rule

8   Violation Reports, as a form of retaliation and retribution for providing testimony against Officer

9   Brockett," plaintiff stated that he "continue[s] to suffer permanent and lasting injuries including

10  aggravation of serious mental disorder, including his post traumatic stress disorder," and again

11  asked that he be transferred "to Atascadero State Hospital, or to the Intermediate Care Facility

12  (ICF) at CMF without further retaliation and retribution."  (Id.)

13          The Second Level Appeal Response was prepared by CSP-S Health Care Manager

14  and defendant Karen Kelly, Ph. D., with the assistance of Chief Psychiatrist and defendant M.

15  Jaffe, M.D., who reportedly reviewed plaintiff's Unit Health record and conducted a "thorough

16  inquiry."  (Dkt. No. 35-3, at 12-13.)  The Response initially provided that plaintiff's alternate

17  "request to go to the ICF at CMF" "is a new issue" and therefore would not be addressed.  The

18  Response stated that "Dr. Martin did not 'downplay' your mental health issues," and challenged

19  plaintiff's assertion that he had post-traumatic stress syndrome, describing it as a "self-reported"

20  claim "not objectively documented in your Unit Health Record."  (Id. at 13.)   Noting that post-

21  traumatic stress syndrome "is not one of the accepted recognized diagnoses treated in CDCR

22  under the Coleman court mandate,"[17] Dr. Kelly concluded that plaintiff was "currently in the

23  Enhanced Outpatient Program and at a level of care sufficient to care for all of your mental health

24

25      [17]  See, e. g., Coleman v. Schwarzenegger, ___ F. Supp.___, 2010 WL 99000 (E.D. Cal.
    January 12, 2010) (class action regarding provision of mental health services to California
26  inmates); plaintiff contends he is a member of this class.

needs." (Id.)

In response, plaintiff explained at length the facts underlying his request (Dkt. No. 35-3, 5, 9-11):

> In January 2000, Dr. Kelly agreed to accept appellant into CSP-SAC-PSU for therapeutic reasons. According to a CDC-128C by Dr. Grimes Appellant has a diagnosis of post-traumatic stress disorder. . . .Appellant's [602] request was based on the fact that appellant has a long history of suffering from major mental illnesses, including post-traumatic stress disorder due to being physically, sexually and emotional[ly] abused as a child which is clearly documented in appellant's CDCR mental health records [citations to records attached to plaintiff's statement][18]. . . . Dr. Jaffe, Dr. Kelly and Dr. Martin did an absolutely pathetic and superficial job of investigating appellant's serious claims in order to foster a code of silence concerning the sexual abuse and retaliation and retribution."

Plaintiff also asserted that Dr. Jaffe's conclusion that plaintiff's records did not disclose a diagnosis of post-traumatic stress disorder "is based on fraud and falsication (sic) of official state records, including perjury." (Id. at 9-10.)

The Director's Level Review, issued September 18, 2006, adopted the findings of the Second Level Review, noting that plaintiff's allegations against Brockett were addressed in a

---

[18] These records are: (1) January 27, 2000 report of Pelican Bay State Prison ("PBSP" or "Pelican Bay") Psychiatric Services Unit ("PSU") Institutional Classification Committee approving plaintiff's transfer to CSP-S for therapeutic reasons based on recommendation of Dr. W. Grimes and agreement of CSP-S Senior Psychologist, due to "diagnosis of Postttraumatic Stress, which would be exacerbated at Corcoran and is also associated with PBSP [Pelican Bay]" Psychiatric Services Unit (Dkt. No. 35-3, at 14); (2) undated handwritten report by Pelican Bay psychologist Dr. William Grimes noting that plaintiff had been a patient at Pelican Bay since May 1998, listing plaintiff's prior diagnoses and stating that "[h]e is most recently diagnosed as (sic) Post-Traumatic Stress Disorder, Schizoaffective disorder and Personality disorder, NOS," noting plaintiff's prior violent confrontations with staff at CSP-Corcoran and Pelican Bay, and related "flashbacks," that plaintiff had made "dramatic progress here at PBSP-PSU, but it is believed by both his treating psychologist and psychiatrist that further progress is not possible unless a change of environment can be effected;" and that "our Senior psychologist Dr. David Schwauber has communicated with Dr. Karen Kelly, Senior Psychologist at SAC-4 PSU who has agreed to admit Mr. Manago to her treatment unit for clinical care" (id. at 15); (3) November 3, 2005 report of Clinical Psychologist D. Wheeler, Psy.D., "Ad Seg EOP Case Manager," that plaintiff had "made a significant improvement in his behavior" since his transfer from Pelican Bay, describing symptoms demonstrating that "it is highly likely that Mr. Manago does have post traumatic symptoms" that "remain a feature of his presentation" (id. at 16-17); (4) March 25, 2004 Mental Health Assessment includes Axis I diagnosis of, inter alia, post-traumatic stress disorder (id. at 18); and (5) June 28, 2004 Suicide Risk Evaluation including Axis II diagnosis of post-traumatic stress disorder (id. at 19).

1   separate administrative appeal, and that "[i]n this case, the institution has provided the appellant

2   with a thorough response.  The appellant is encouraged to avail himself of the treatment available

3   to him within the CDCR Mental Health Services Delivery System.  There is no basis to grant the

4   appellant's request for a transfer to ASH or cause to intervene at the DLR [Director's Level

5   Review]."  (Dkt. No. 35-3, at 2.)

6           Although this administrative appeal identifies no officials by name, it is clear that

7   it is directed toward the members of the CSP-S mental health staff.  This construction is

8   underscored by the unified approach of the reviewing staff who narrowly construed plaintiff's

9   grievance to a transfer request, discredited plaintiff's apparently accurate recounting of his

10  mental health history (including a diagnosis of post-traumatic stress disorder which, together

11  with his other needs, may have warranted his transfer to CSP-S), and repeatedly assured plaintiff

12  that he was being provided adequate care.  Thus, this appeal demonstrates exhaustion of

13  plaintiff's claims against Kelly, Jaffe and Martin pursuant to plaintiff's third cause of action for

14  deliberate indifference to his serious mental health needs, as well as his related fourth cause of

15  action for failure to protect, although these defendants are unnamed in the formal recitation of the

16  claim.  (Dkt. No. 20, at 19.)

17          Plaintiff also names defendants Kelly, Jaffe and Martin in his fifth cause of action

18  for failure to supervise.  The supervisory roles of Kelly and Jaffe are clearly alleged,[19] as are their

19  direct constitutional violations and implicitly consistent supervision of other mental health staff.

20  Thus, this claim should proceed as to Kelly and Jaffe, but not Martin.  Finally, although plaintiff

21  names these defendants in his second cause of action based on retaliation, and the impetus for

22  this administrative appeal included plaintiff's desire to escape alleged retaliatory conduct at CSP-

23  S, the administrative grievance fails to support a claim against the mental health staff for

24  _____

25  [19]   The amended complaint identifies these defendants' supervisory roles as follows: Jaffe
    as "The Chief Psychiatrist, as CSP-Sacramento," Kelly as the "Chief Psychologist, at CSP-
26  Sacramento."  (Dkt. No. 20, at 4.)

1    retaliatory conduct.

2              d.  IAB Case No. 0607033 (Local Log No. SAC 06-01729)

3              On June 12, 2006, plaintiff filed a 602 appeal alleging perjury, "fraud and

4    falsication (sic) of official state records" by "M. Jaffe, M.D., Chief Psychiatrist, R. Kelly, Ph.D.,

5    Health Care Manager, and J. Martin, Ph.D., Senior Psychologist at CSP-Sacramento."[20] (Dkt. No.

6    35-3, at 23.)  Plaintiff challenged the representations of these officials, pursuant to plaintiff's

7    prior 602 appeal (IAB Case No.0515216 (Local Log No. SAC 06-00783)) that they had reviewed

8    all of plaintiff's mental health records and concluded that plaintiff did not suffer from post-

9    traumatic stress disorder, either historically or "due [to] sexual abuse by former officer Mary

10   Brockett," nor did they recognize plaintiff's "further alle[gation] that he has stress and anxiety

11   due to ongoing retaliation and retribution by some custody and mental health staff."  (Id. at 30.)

12   Plaintiff alleged (Id. at 31):

13             It is appellant's position that Dr. Jaffe, Dr. Kelly and Dr. Martin knew that
               appellant has been diagnosed to have a serious PTSD by CDCR mental health
14             staff at Pelican Bay, CSP-Sacramento, Salinas Valley and outside private
               psychologists which is clearly documented in appellant's mental health records.
15             It is appellant's position that Dr. Jaffe, Dr. Kelly and Dr. Martin did an 'absolutely
               pathetic and superficial job of investigating ['] appellant's inmate appeal log No.
16             SAC-H-06-00783, in order to foster a code of silence concerning the sexual abuse
               and retaliation and retribution.

17

18   Plaintiff requested "that this matter be fully investigated by state and federal officials and that

19   criminal charges be filed against the mentally unstable supervisors named herein."  (Id. at 23.)

20             Informal level review was bypassed.  (Id. at 23.)  On October 11, 2006, Dr. J.

21   Martin issued the First Level Appeal Response, finding that plaintiff's grievance did not qualify

22   as a staff complaint, and that plaintiff's request for transfer to ASH had already been denied.

23   (Dkt. No. 35-3, at 25.)  In response to plaintiff's statement of dissatisfaction (id. at 24), Dr. Kelly

24   issued the Second Level Appeal Response on November 30, 2006, wherein she again

25   _____

26             [20]  However, the amended complaint does not allege a state law claim of fraud.

1  acknowledged the assistance of Dr. Jaffe in reviewing plaintiff's records, and denied plaintiff's

2  appeal based upon the following findings (id. at 26-27):

> 3  You indicate that Dr. Jaffe and Dr. Martin lied in that they did not recognize your claim for PTSD and did not refer you to Atascadero State Hospital.
> 4  Parenthetically speaking, PTSD is not a disorder recognized to be treated in the CDCR when it is, in fact, diagnosed.  Your request for consideration to
> 5  Atascadero State Hospital is not granted for the reasons stated by Dr. Martin.

> 6  The medical care of inmates is one of the highest concerns of the staff of SAC. You are encouraged to use the sick call system and communicate with the medical
> 7  staff via the normal procedures.  This institution endeavors to provide appropriate medical care and treatment commensurate with the community standard for health
> 8  services.

9  Plaintiff thereafter alleged that "Drs. Kelly and Jaffe are engaged in criminal

10  corruption at CSP-Sacramento and attempting to cover up staff sexual misconduct relating to this

11  appeal," and requested "that the Director order a full investigation."  (Id. at 24.)  This appeal was

12  denied by the Director's Level Appeal Decision, issued February 6, 2007, which found that

13  plaintiff's request for transfer to Atascadero State Hospital was inappropriate for the reasons

14  stated in plaintiff's prior appeal, and that plaintiff's allegations of fraud on the parts of mental

15  health personnel were unsupported, based on the following reasoning (id. at 21):

> 16  Although the appellant claims he has PTSD, he was advised this condition is not treated in the Mental Health Services Delivery System (MHSDS).  There is no
> 17  indication that Dr. Jaffe, Dr. Kelly and/or Dr. Martin provided fraudulent information to the appellant regarding his request for a transfer to ASH.  The
> 18  appellant is appropriately housed at SAC, Psychiatric Services Unit and is receiving the appropriate mental health intervention commensurate with his level-
> 19  of-care, as outlined in the MHSDS Guidelines (1997).  After review, there is no compelling evidence that necessitates intervention at the Director's Level of
> 20  Review.

21  This administrative appeal, like the preceding appeal, demonstrates the

22  administrative exhaustion of plaintiff's claims against Kelly, Jaffe and Martin pursuant to

23  plaintiff's third cause of action for deliberate indifference to his serious mental health needs, and

24  his fourth cause of action for failure to protect.  It also demonstrates exhaustion of plaintiff's fifth

25  cause of action against Kelly and Jaffe in their supervisory roles.  However, each of these

26  defendants should be dismissed from plaintiff's second cause of action based on retaliation.

1                e.  <u>IAB Case No. 0607981 (Local Log No. SAC 06-02306)</u>

2                In plaintiff's 602 Appeal filed October 15, 2006, he alleged that Captain S. Vance,

3  Lieutenant S. Shannon, Sergeant B. Joseph, and Officers R. Garcia, J. Tinseth, J. Wachter, R.

4  Morrow spread rumors that plaintiff was a "snitch" for reporting Brockett's alleged misconduct

5  and that it was therefore "open season" against plaintiff, thus "conspiring or inciting other

6  inmates to assault appellant, . . .working hand to hand in order to have additional false

7  confidential information placed in appellant's C-file, . . .granting special privileges to some

8  inmates who assist them with their retaliatory actions, including false confidential information

9  against inmates who officials want off the yard for filing staff misconduct complaint, and . . .

10  paying some inmates tobacco and coffee in order to have some well known mentally ill inmate

11  patients to file false confidential information against me as a flavor (sic) for Captain S. Vance

12  and other corrupted staff on 'A' Facility." (Dkt. No. 35-4, at 4-6.) Plaintiff requested that an

13  unbiased investigation be conducted by the Office of Internal Affairs, and that plaintiff be

14  awarded one million dollars as "relief for retaliation." (<u>Id</u>. at 4.) These allegations of retaliatory

15  conduct are explained and reiterated in plaintiff's amended complaint. (Dkt. No. 20, at 12-18.)

16                Associate Warden R. Hill issued the first formal level response on November 15,

17  2006, noted that plaintiff had been interviewed on October 31, 2006 by Sargeant C. Gold, and

18  that plaintiff's grievance was therefore partially granted insofar as "an inquiry into your

19  allegation has been conducted." (Dkt. 35-4, at 8.) Plaintiff thereafter complained that Sargeant

20  Gold failed to ask him for the inmate witness evidence he offered. (<u>Id</u>. at 5.) Warden J. Walker

21  issued the second formal level response on December 26, 2006, stating that the inquiry into

22  plaintiff's allegations had been completed and no further inquiry was warranted. (<u>Id</u>. at 9.) In

23  response to plaintiff's statement of dissatisfaction that staff failed to interview his witnesses (<u>id</u>.

24  at 5), the Director's Level Appeal Decision, issued April 12, 2007, granted in part plaintiff's

25  appeal, stating (<u>id</u>. at 2):

26                On April 10, 2007, the written report of appeal inquiry of the staff complaint was

1   obtained and examined at the DLR.  The inquiry does nothing to investigate the
    appellant's allegations.  For example, the investigator states that he does not have
2   to interview witnesses, if the appellant does not provide the names before the
    interview.  The DLR maintains that this statement is inaccurate and not consistent
3   with effective misconduct investigative standards.  Based on the above, the
    institution shall redo the inquiry addressing any and all facts that support their
4   eventual finding.  The appellant shall be notified of its completion. . . . This
    decision exhausts the administrative remedy available to the appellant within the
5   CDCR.

6          This administrative appeal demonstrates exhaustion of plaintiff's second cause of

7   action for retaliation against defendants Vance, Shannon, Joseph, Garcia, Tinseth, Wachter, and

8   Morrow.  Defendants Hill and Gold were responsible for implementing the initial review, found

9   at the Director's level of review to be inconsistent with effective misconduct investigative

10  standards.  This finding is consistent with plaintiff's repeated claim of a "code of silence"

11  surrounding the actions of CSP-S correctional and mental health staff, and thus the conduct of

12  both Hill and Gold – who are named generally as defendants – is encompassed by the allegations

13  of this grievance.  In addition, defendants Vance, Shannon, Joseph, Hill and Gold each hold

14  supervisory roles,[21] and their allegedly direct participation in violating plaintiff's constitutional

15  rights render them proper defendants pursuant to plaintiff's fifth cause of action for failure to

16  supervise.

17          f.  IAB Case No. 0611287 (Local Log No. SAC 06-0264)

18          On October 23, 2006, plaintiff filed a 602 Appeal alleging that he was not

19  receiving adequate mental health treatment at CSP-S.  Plaintiff reiterated his interactions with

20  Brockett and his allegations of staff retribution and retaliation for plaintiff's participation in

21  Brockett's termination, including being "subjected to intermediate sanctions in lieu of false rule

22  violation reports and illegal placement in (PSU) based on false inmate manufactured confidential

23  information;" he identified symptoms of PTSD, stress, anxiety, hearing unwanted voices, feeling

24  _____

25         [21]  The amended complaint identifies these defendants' supervisory roles as follows:
    Hill is the Associate Warden at CSP-Sacramento, Vance is Facility Captain, Shannon is
26  Correctional Lieutenant, and Joseph and Gold are both Correctional Sergeants.  (Dkt. No. 20, at
    3.)

1   depressed and paranoid, having flashbacks of the alleged sexual abuse, nightmares, vomiting,

2   and rage; and stated that he was unable to confide in the CSP-S mental health staff.  (Dkt. No.

3   35-4 at 13, 15.)  Plaintiff "respectfully request[ed] a transfer to the intermediate care facility at

4   Vacaville [CMF] or Atascadero State Hospital for Mental Health Treatment" and that he "be

5   provided with all reports related to this request."  (Id. at 13.)

6            Informal level review was bypassed.  (Id.)  At the First Level Review, plaintiff's

7   appeal was partially granted on January 3, 2007, subject to the interview and report of Senior

8   Psychologist Henry Raming, Ph.D.  (Id. at 14 (a copy of the report has not been provided).)

9   Apparently during this interview, plaintiff complained that Dr. Stabbe had refused to recommend

10  plaintiff's transfer to CMF or ASH.  (Id. at 11 ("The appellant also complains that Dr. Stabbe

11  refused to recommend a transfer for him to either the California Medical Facility (CMF) or

12  Atascadero State Hospital (ASH)."))  Plaintiff expressed dissatisfaction with Dr. Raming's

13  decision, asserting that the California Medical Facility had adequate facilities to meet plaintiff's

14  needs, specifically, single cells for high security ("Level IV") inmates.  (Id. at 11, 16.)  The

15  Second Level Review decision denying plaintiff's appeal was completed by Dr. Jaffe on

16  February 22, 2008.  (Id. at 14 (a copy of Dr. Jaffe's letter has not been provided).)  Plaintiff

17  expressed his dissatisfaction, stating, "Appellant is dissatisfied because prison officials are

18  playing word games and attempted to cover up their ongoing retaliation and retribution."  (Id.)

19            The Director's Level Appeal Decision, issued June 11, 2007, denied plaintiff's

20  appeal, reaffirmed the findings and conclusions of the prior levels of review, and concluded that:

21  "The appellant is encouraged to avail himself of the treatment available to him within the CDCR

22  Mental Health Services Delivery System.  There is no basis to grant the appellant's request for a

23  transfer to the CMF or ASH.  There is no cause to intervene at the DLR."  (Id. at 12.)

24            This administrative appeal provides further exhaustion of plaintiff's third cause of

25  action for alleged deliberate indifference to plaintiff's serious mental health needs, particularly

26  against Dr. Jaffe.  However, the allegations therein are insufficient to state a claim against

1   defendant Dr. Stabbe, a staff psychologist whose decisions were merely consistent with prior

2   directives.  Nor does this appeal exhaust claims for retaliation against Jaffe or Stabbe, who

3   should also be dismissed from plaintiff's second cause of action.

4              3.  <u>SUMMARY</u>

5              For the reasons set forth above, the court concludes that plaintiff has

6   administratively exhausted his first cause of action for excessive force against defendant

7   Brockett; his second cause of action for retaliation against defendants Vance, Kennedy,

8   Williams, Chapman, Shannon, Joseph, Garcia, Tinseth, Wachter, Morrow, Hill and Gold, but not

9   against defendants Kelly, Jaffe, Martin, Stabbe (nor Brockett, who is also named); his third cause

10  of action for deliberate indifference against defendants Vance, Kennedy, Williams, Chapman,

11  Kelly, Jaffe and Martin, but not against Stabbe (nor Hill, who is also named); his fourth cause of

12  action for failure to protect against defendants Vance, Williams, Chapman, Kelly, Jaffe and

13  Martin; and his fifth cause of action for failure to supervise against defendants Vance, Williams,

14  Chapman, Kelly, Jaffe, Shannon, Joseph, Hill and Gold, but not against Martin.[22]

15             In addition, the court notes its previous finding that service of process was (and

16  remains) inappropriate upon named defendants Knowles (former Warden, CSP-S) and Stiles

17  (former Chief Deputy Warden, CSP-S) (Dkt. No. 28), who should be dismissed from this action

18  without prejudice.

19  III.  <u>PLAINTIFF'S ADDITIONAL MOTIONS</u>

20             Also requiring resolution are plaintiff's further motion for sanctions (Dkt. Nos.

21  44), his motion for judicial intervention (Dkt. No. 49), motions for protective order (Dkt. Nos.

22  59, 60), and motion for court-ordered confidential calls (Dkt. No. 71).

23       A.  <u>Plaintiff's Motion for Sanctions filed December 17, 2009 (Dkt. No. 44)</u>

24

25       [22]  The court notes that in ruling on defendants' motions to dismiss, it makes no
    determination as to the adequacy of plaintiff's allegations or evidence in support thereof with
26  regard to any potential motions for summary judgment.

1            Pursuant to motion filed December 17, 2009 (Dkt. No. 44), plaintiff moves for

2   monetary sanctions against defendants for their alleged:  (1) noncompliance with former Local

3   Rule 78-230(m), based on the assertion that defendants failed to timely file their reply to

4   plaintiff's opposition to defendants' motion to dismiss; (2) false contention that plaintiff failed to

5   exhaust his administrative remedies against defendants Williams, Wachter, Garcia, Tilseth, Gold,

6   Vance, Shannon, Joseph, Jaffe, Stabbe, Martin, Kelly, Morrow, Hill and Chapman; and

7   (3) failure to disclose to the court that plaintiff had exhausted a seventh relevant administrative

8   appeal as to defendants Donahue, Muniz, Caplan and Hedgpeth.  Plaintiff's motion is also

9   construed as plaintiff's further opposition to defendants' motion to dismiss.  Defendants filed an

10  opposition to the instant motion, attaching three letters that counsel received from plaintiff.  (Dkt.

11  No. 46).

12           Only the first of plaintiff's contentions has merit, but it provides an insufficient

13  basis for awarding sanctions.  Plaintiff timely filed his opposition to defendants' motion to

14  dismiss on November 20, 2009 (Dkt. No. 38), rendering the deadline for defendants' reply as

15  Saturday, November 29, 2009; because this deadline fell on a weekend, the filing deadline was

16  Monday, November 30, 2009.[23]  Defendants belatedly filed their reply on December 3, 2009.

17  (Dkt. No. 42.)  The court discerns no prejudice as a result of the late filing.  As with the court's

18  acceptance of the untimely filings of both plaintiff and defendant Brockett relative to the latter's

19  statute of limitations motion (see supra at p. 4), and based on a policy of reaching the substance

20  of matters presented in this case, the court accepts the late filing of defendants' reply brief *nunc*

21  *proc tunc*.  Given the prolific filings in this case, primarily by plaintiff, and defendants' delay of

22

---

23           [23]  Former Local Rule 78-230(m) provided in pertinent part that "[t]he moving party may,
    not more than five (5) court days after the opposition is served, plus three (3) days for mailing or
24  electronic service, serve and file a reply to the opposition."  Additionally, former Fed. R. Civ. P.
    6(a) required that, for periods less than 11 days, intermediate Saturdays, Sundays, and legal
25  holidays were not to be excluded, Fed. R. Civ. P. 6(a)(2) (2009), although "[w]hen the last day is
    excluded, the period runs until the end of the next day that is not a Saturday, Sunday, [or] legal
26  holiday," id., Fed. R. Civ. P. 6(a)(3).

1    only three days in filing their reply, the lateness of this filing presents no ground for imposing

2    sanctions upon defendants.

3              Plaintiff's second contention, that plaintiff should be awarded sanctions because

4    defendants falsely represented that he failed to exhaust his administrative remedies against

5    defendants Williams, Wachter, Garcia, Tilseth, Gold, Vance, Shannon, Joseph, Jaffe, Stabbe,

6    Martin, Kelly, Morrow, Hill and Chapman, is without merit.  While plaintiff is correct that a

7    defendant not expressly identified during the administrative exhaustion process may, if implicitly

8    identified, nonetheless be named in a suit, Jones, 549 U.S. at 219, plaintiff's challenge is directed

9    to defendants' advocacy position relative to exhaustion, nothing more.  The court has already

10   identified which of these defendants should remain in this suit.  Thus, this contention provides no

11   basis for imposing sanctions.

12             Plaintiff's third contention is that defendants improperly failed to disclose to the

13   court that plaintiff had exhausted a seventh purportedly relevant administrative grievance as to

14   defendants Donahue, Muniz, Caplan and Hedgpeth.  Plaintiff has identified and attached

15   documents relative to IAB Case No. 0404397 (Local Log No. SVSP 04-02845), which he filed

16   on July 27, 2004, while incarcerated at Salinas Valley State Prison ("SVSP").  Plaintiff contends

17   that this appeal is relevant to his contentions that prison officials retaliated against him for

18   participating in the Brockett investigation.  Review of the administrative appeal demonstrates

19   that it contains multiple allegations of alleged staff misconduct, only some of which reference

20   alleged retaliation against plaintiff for participating in the Brockett matter.  (See Dkt. No. 44, at

21   10-11.)  While many of these allegations are consistent with plaintiff's claims set forth in his

22   other administrative appeals, e.g., alleging staff threats conveyed by inmate Hackett, the

23   grievance is inapposite for the following reasons:  (1) the grievance challenges alleged conduct

24   that occurred only at SVSP, while the amended complaint is expressly limited to the alleged

25   violation of plaintiff's constitutional rights "while in . . . custody . . . at the California State

26

1    Prison-Sacramento. . . " (Dkt. 20, at 1);[24] and (2) none of the officials whose conduct is

2    challenged in the SVSP grievance are named or otherwise identified as defendants in this action.

3    While the facts underlying the SVSP grievance may provide additional evidence in support of

4    plaintiff's claims before this court, the grievance is not material to the assessment of whether

5    these claims have been administratively exhausted.  Thus, the court finds that defendants

6    properly excluded this administrative appeal from those submitted to the court pursuant to their

7    motion to dismiss.

8            Accordingly, plaintiff's motion for sanctions filed December 17, 2009 (Dkt. No.

9    44) will be denied.

10           B.  <u>Plaintiff's Motion for Judicial Intervention filed December 17, 2009 (Dkt. No. 49)</u>

11           On December 9, 2009, the U.S. Marshal returned an unexecuted summons which

12   indicated that the agency had been unable to serve process upon defendant William Samuel

13   Laffitte, a former correctional officer at CSP-S.  (Dkt. No. 43.)  A notation on the summons

14   provided that Laffitte was "no longer at this address."  (<u>Id</u>.)  On December 31, 2009, plaintiff filed

15   a "Motion for Judicial Intervention Concerning Defendant Wallace Samuel Laffitte," pursuant to

16   which he sought the court's assistance in locating Laffitte's current address.  (Dkt. No. 49.)  The

17   court granted the motion in part by order filed January 15, 2010, requesting that CDCR provide, if

18   possible, Laffitte's current address.  (<u>See</u> Dkt. No. 55, at 4-5.)  Although CDCR timely responded

19   to other matters in that order, it did not timely respond to this request.  (Dkt. No. 56.)  However,

20   CDCR belatedly complied with the request on February 16, 2010, and provided Laffitte's last

21   known address which was the same as that set forth in the unexecuted summons.  (Dkt. No. 68.)

22           The court concludes that it can be of no further assistance on this matter at this

23   time and will therefore deny the motion without prejudice, and recommend Laffitte's dismissal

24

25          [24] Pursuant to the amended complaint, plaintiff was transferred to SVSP in January 2004,
     transferred temporarily to CSP-S on June 2, 2004, in order to testify against Brockett, then
26   transferred from SVSP to HDSP in September 2004.  (Dkt. No. 20 at 10-11.)

1   without prejudice.

2        C.   Plaintiff's Motions Challenging Access to the Courts (Dkt. Nos. 59, 60, 71)

3              Plaintiff has filed three motions alleging undue restrictions in his ability to pursue

4   the instant action.  The first two motions seek, inter alia, protective orders relative to plaintiff's

5   legal materials (Dkt. Nos. 59, 60); the third motion seeks an order of this court requiring prison

6   officials to permit plaintiff to make confidential telephone calls (Dkt. No. 71).

7              "It is now established beyond doubt that prisoners have a constitutional right of

8   access to the courts." Bounds v. Smith, 430 U.S. 817, 821 (1977); see also, Ching v. Lewis, 895

9   F.2d 608, 609 (9th Cir. 1990).  In order to state a denial of access claim under the First

10  Amendment, a prisoner must show that he suffered an "actual injury" as a result of the

11  defendants' actions by explaining how the challenged official acts or omissions hindered

12  plaintiff's efforts to pursue a nonfrivolous legal claim.  Lewis v. Casey, 518 U.S. 343, 351-55

13  (1996).  Plaintiff must show "actual prejudice with respect to contemplated or existing litigation,

14  such as the inability to meet a filing deadline or to present a claim." Id. at 348.  Actual injury may

15  be shown if the denial "hindered his efforts to pursue a legal claim," such as having his complaint

16  dismissed for "for failure to satisfy some technical requirements" or if he "suffered arguably

17  actionable harm that he wished to bring before the courts, but was so stymied [by the denial] that

18  he was unable even to file a complaint." Id. at 351.

19             Plaintiff's allegations in these motions are wide-ranging.  In the first motion,

20  plaintiff seeks a protective order restraining defendants and their staff from, inter alia, "illegally

21  reading and searching plaintiff's legal materials and work product out of his presence" (Dkt. No.

22  59, at 1), and further examining his legal file which includes "over nine big boxes of work product

23  materials" (id. at 14).  Plaintiff asserts that the attorney-client privilege and work product doctrine

24  should protect his communications with attorneys (who are not of record, as plaintiff proceeds

25  without counsel in this action), and that prison officials have improperly opened his mail from

26  these attorneys; plaintiff seeks the return of handwritten letters from inmate witnesses W.

1    Williams, L. Perkins, and M. Jones, allegedly removed from plaintiff's legal files by correctional

2    officer T. Turmezei in November and December 2009, and an order requiring the Warden to

3    remove these letters from plaintiff's 'C' File; plaintiff also seeks the return of nonlegal material

4    from Turmezei, including plaintiff's "Black Guerilla Family" training materials, his George

5    Jackson book and newspaper articles, and his Black Seeds calendar; additionally, plaintiff states

6    that he is a member of the Project Watts Crips gang, and contends that prison officials are

7    improperly sharing this personal information with other inmates who may pose a danger to

8    plaintiff.  (See generally, Dkt. No. 59.)

9            While plaintiff states that he "wrote several inmate appeals against staff at CSP-

10   Sacramento for illegally opening up my confidential legal mail" (id. at 21), this 110-page filing

11   does not include a 602 appeal or any other document demonstrating exhaustion of plaintiff's

12   administrative remedies on any of these matters.

13           In his second motion, plaintiff seeks the return of legal property ("work product"),

14   allegedly taken from plaintiff's cell at CCI-Tehachapi on December 2, 2009, while plaintiff was

15   temporarily transferred to California Medical Facility in order to appear in Solano County

16   Superior Court.  Plaintiff states that there was a difference of opinion among officers regarding

17   whether plaintiff's belongings, including his legal materials, would remain in his cell during his

18   absence or be removed; they were removed, as plaintiff discovered upon his return on December

19   4, 2009.  When the files were returned, they were out of order and incomplete.  Missing were

20   plaintiff's copies of the Federal Rules of Civil Procedure, Federal Rules of Evidence, and several

21   requests for discovery plaintiff had prepared.  Plaintiff contends that his self-representation

22   renders him "an officer of the court" and seeks an order of this court prohibiting CDCR "from

23   monitoring plaintiff's confidential work product between his inmate witnesses because it

24   constitutes a breach of the attorney-client privileges and interfer[es] with plaintiff's right to

25   represent himself."  Plaintiff also asserts that correctional officers improperly shared his "work

26   product" with institutional gang investigators.  (See generally, Dkt. No. 60.)

1    While plaintiff references inmate appeals filed at CCI-Tehachapi to challenge these

2  matters, he demonstrates neither administrative exhaustion nor relevance to the instant action

3  challenging official conduct at CSP-Sacramento.

4    In his third motion, plaintiff seeks an order of this court authorizing plaintiff, while

5  at CCI-Tehachapi, to make up to five confidential calls per week (one call each day for 20

6  minutes) to his "representatives," expert witnesses, investigators and his wife, in preparation of

7  this action; plaintiff seeks to make and receive these calls without being monitored by prison

8  officials, and contends this is a right inherent in his Sixth Amendment right to self-representation.

9  (See generally, Dkt. No. 71.)  Plaintiff fails to demonstrate that he has pursued this matter

10  pursuant to the institutional grievance process.

11    The court's review of each of these motions and attached documents demonstrates

12  that none present an administratively exhausted claim encompassed within the causes of action set

13  forth in plaintiff's amended complaint.  While the issues presented in these motions share

14  plaintiff's overarching contention that he has been denied his right to access the courts, the

15  allegations belong in different actions after they are administratively exhausted.[25]  Each of these

16  motions will therefore be denied.

17  IV.  CONCLUSION

18    For the foregoing reasons, IT IS HEREBY ORDERED that:

19    1.  Plaintiff's motions for sanctions against defendants and their counsel (Dkt. Nos.

20  44, 77) are denied;

21

22    [25]  Plaintiff is informed that the attorney-client privilege is not necessarily implicated in
his communications with consulting attorneys who do not represent him.  See, e.g., Giba v.
23  Cook, 232 F. Supp. 2d 1171, 1187 (D. Or. 2002).  Nor does plaintiff's right of self-representation
transform his legal materials into confidential attorney work product or provide him routine
24  access to confidential telephone calls.  In addition to the requirement that plaintiff establish a
resulting injury, a prisoner's right of access to the courts must be balanced with a prison's
25  "penological interest in curtailing the prisoner's privacy rights.  See Hudson v. Palmer, 468 U.S.
517, 530 (1984) (inmates have no expectation of privacy in their living quarters); Bell v.
26  Wolfish, 441 U.S. 520, 537 (1979) (prisoner's privacy rights curtailed by prison's security
interests)."  Gomez v. Vernon, 255 F.3d 1118, 1133 (9th Cir. 2001).

1        2.  Plaintiff's motion for judicial intervention ((Dkt. No. 49), partially granted on

2  January 15, 2010 (Dkt. No. 55), is denied without prejudice; and

3        3.  Plaintiff motions for protective order (Dkt. Nos. 59, 60), and motion for court-

4  ordered confidential calls (Dkt. No. 71) are denied.

5        Further, IT IS HEREBY RECOMMENDED that:

6        1.  Defendant Brockett's motion to dismiss plaintiff's first cause of action (Dkt.

7  No. 53) should be denied.

8        2.  The motion of all defendants to dismiss plaintiff's amended complaint for

9  failure to exhaust administrative remedies (Dkt. No. 35) should be denied in part and granted in

10  part.

11        3.  The following defendants should be dismissed from this action without

12  prejudice:  Knowles, Stiles, Laffitte and Stabbe.

13        4.  Service of process should be ordered upon defendant Kennedy.

14        These findings and recommendations are submitted to the United States District

15  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 21 days

16  after being served with these findings and recommendations, any party may file written objections

17  with the court and serve a copy on all parties.  Such a document should be captioned

18  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

19  objections shall be filed and served within 14 days after service of the objections.  The parties are

20  advised that failure to file objections within the specified time may waive the right to appeal the

21  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

22  DATED:  May 14, 2010

23

24

25                              KENDALL J. NEWMAN

                                UNITED STATES MAGISTRATE JUDGE

26  mana2290.all mtns