IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEWART MANAGO,

    Plaintiff,

    vs.

BRAD WILLIAMS, et al.,

    Defendants.

    /

No. 2:07-cv-2290 LKK KJN P

ORDER and
FINDINGS AND RECOMMENDATIONS

Presently pending for decision by this court are the following motions recently filed by plaintiff: (1) Motion for Judicial Intervention, filed June 10, 2010 (Dkt. No. 84); (2) Motion for a Senate Investigation, filed June 17, 2010 (Dkt. No. 85); (3) Motion for Protective Order, filed June 21, 2010 (Dkt. No. 86); (4) Motion for Reconsideration, filed June 21, 2010 (Dkt. No. 87); (5) Motion for Temporary Restraining Order, filed June 24, 2010 (Dkt. No. 88); and (6) Motion to Compel Discovery from Defendant Mary Brockett (Dkt. No. 81).

Plaintiff is presently incarcerated at California Correctional Institution, Tehachapi ("CCI"). This case proceeds on plaintiff's amended complaint, filed November 26, 2008, against individual defendants employed at California State Prison-Sacramento (referred to herein as "CSP-S," "CSP-Sac" or "CSP-Sacramento"), and the Office of Internal Affairs-Northern Region

1

1  ("OIA") of the California Department of Corrections and Rehabilitation ("CDCR" or

2  "Department").  The amended complaint alleges, inter alia, that although plaintiff was transferred

3  to CSP-S in 2000 for the express purpose of facilitating his mental health treatment, he was there

4  sexually harassed by correctional officer Mary Brockett.  Plaintiff asserts that he participated in a

5  sting operation against Brockett that resulted in her dismissal and that thereafter staff retaliated

6  against plaintiff in several ways, including denying him adequate mental health treatment.  The

7  amended complaint alleges causes of action for excessive force, retaliation, deliberate

8  indifference to plaintiff's mental health needs, failure to investigate plaintiff's complaints of

9  sexual misconduct and to protect him accordingly, and failure to provide adequate supervision of

10 correctional and mental health staff.  (Dkt. No. 20, at 18-20.)

11         On February 26, 2010, this court recommended that plaintiff's motion for a

12 temporary restraining order, his third request for injunctive relief, be denied.  (Dkt. No. 74.)  The

13 district judge adopted this recommendation by order filed March 31, 2010.  (Dkt. No. 76.)  On

14 May 14, 2010, this court recommended that defendants' motions to dismiss be granted in part

15 and denied in part.  (Dkt. No. 78.)  In addition, the court denied plaintiff's motions for sanctions

16 against defendants and their counsel, plaintiff's motion for judicial intervention, plaintiff's

17 motion for protective order and his motion for court-ordered confidential calls.  (Id.)

18 I.    Motion for Judicial Intervention (Dkt. No. 84), and Motion for a Senate Investigation
       (Dkt. No. 85)
19

20         Both of these motions seek an order of this court directing the United States

21 Attorney's Office and/or the California State Senate to investigate plaintiff's "Request for Senate

22 Investigation" (Dkt. No. 84, Exh. A).  Plaintiff asserts that he brings these matters before the

23 court pursuant to 42 U.S.C. § 1985.  The attached "Request" sets forth the chronology of this

24 litigation and other allegations, including plaintiff's assertion that CDCR officials are engaged in

25 ongoing criminal conduct and corruption, that the CDCR administration promotes policies and

26 practices supporting organized crime within the Department cloaked in an ongoing "code of

silence," and that CDCR officials have retaliated against plaintiff and other inmates for "whistle blowing," including improper reliance on the gang validation procedure. Plaintiff states that he has submitted the same information to CDCR staff, the Department's Office of Internal Affairs, the Secretary and Undersecretary of CDCR, the Office of the Inspector General and the Governor. (Dkt. No. 84, at 34.)

This court is without authority to direct that an investigation be conducted by the California Senate or the U.S. Attorney's Office. The tripartite system of our government depends upon the separate and co-equal powers of its judicial, legislative, and executive branches. Each of the entities plaintiff has contacted must evaluate plaintiff's allegations within the parameters of their respective authority.

Nor does plaintiff demonstrate that he has satisfied the preconditions for bringing suit on these matters pursuant to 42 U.S.C. § 1985.[1] Section 1985, Title 42, United States Code, proscribes conspiracies to interfere with civil rights. See, e.g., Haddle v. Garrison, 525 U.S. 121 (1998); Kush v. Rutledge, 460 U.S. 719 (1983); Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971). Plaintiff is limited to pursuing in this court only those cognizable allegations which he has administratively exhausted at the time he filed his complaint. McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002). As this court explained at length in its last order, with detailed analysis of each of plaintiff's administrative grievances, the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 [et seq.] of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Not only does plaintiff fail to assert that he has exhausted his allegations of departmental conspiracy through the administrative grievance process but, even if he had,

////

---

[1] Plaintiff relies on nonexistent § 1985 "(c)."

these issues would need to be pursued in separate actions based on the further requirement of the PLRA that all administrative remedies be exhausted *prior* to filing suit.

Thus, the court has no authority to grant any relief based on plaintiff's motion for judicial intervention or motion for a senate investigation. Accordingly, these motions will be denied.

II.     Motion for Reconsideration (Dkt. No. 87)

Pursuant to this motion, plaintiff seeks reconsideration of the court's order entered March 3, 2010 (Dkt. No. 75), which adopted findings and recommendations filed January 28, 2010 (Dkt. No. 57). Plaintiff alleges that defendants' counsel, Shanan Hewitt, made false representations to the court in her declaration filed January 20, 2010 (Dkt. No. 56), and failed to comply with the court's orders filed July 13, 2009 (Dkt. No. 28) (setting forth general rules of compliance)[2] and January 14, 2010 (Dkt. No. 55) (which directed CDCR to respond to plaintiff's allegations that his rib injury was not being treated). Plaintiff seeks monetary sanctions and a court order requiring an independent medical examination.

The following background is pertinent. In his motion for preliminary injunction filed April 21, 2009, while plaintiff was housed at CSP-S, plaintiff alleged that he was at risk of assault and/or murder because prison staff were telling inmates that plaintiff was a "snitch" for providing testimony against Brockett. (Dkt. No. 23.) Plaintiff was thereafter transferred to the CCI. On October 16, 2009, plaintiff filed a "Motion for Special Hearing" wherein he alleged that on September 8, 2009, before his transfer to CCI, plaintiff had been assaulted by inmates at CSP-S and responding prison staff had "kicked plaintiff in his left rib area, and broke plaintiff['s] rib and failed to provide medical care in order to cover up this incident." (Dkt. No. 34, at 2.)

---

[2] The court's order filed July 13, 2009 was a "boiler" order directing service of plaintiff's amended complaint on several defendants. (Dkt. No. 28.) Plaintiff relies on the following language of that order: "A motion or opposition supported by unsigned affidavits or declarations will be stricken" (id. at 5, ¶12); and "The failure of any party to comply with this order, the Federal Rules of Civil Procedure, or the Local Rules of Court may result in the imposition of sanctions including, but not limited to dismissal of the action or entry of default" (id., ¶15).

Plaintiff alleged, "[w]hen plaintiff kept complaining to staff and medical staff they subjected plaintiff to retaliatory transfer without further treatment or x-rays." (Id.) Plaintiff alleged that the assault was a "set up" by prison staff and that he remained in "serious pain without treatment" at CCI. (Id. at 3, 4.)

In response to these allegations, the prior magistrate judge ruled as follows (Dkt. No. 55, at 3-5):

> As for plaintiff's statement that he has not been treated for injuries he received in the alleged assault at CSP-Sac, plaintiff makes that allegation as part of his request for a "special hearing," not as part of his motion for a preliminary injunction. Moreover, plaintiff does not allege that the defendants named in this action had any involvement in the treatment of injuries that allegedly stemmed from an assault by plaintiff's fellow inmates or from prison officials' attempts to stop the assault. Nonetheless, the allegation that plaintiff's injuries have not been treated is sufficiently serious, if true, such that the court construes it as a request for additional injunctive relief that requires a prompt response. Therefore the court will order the California Attorney General's office, as general counsel for the CDCR, to file a response to the allegation that plaintiff's rib injuries have not been treated. See 28 U.S.C. § 1651 [authorizing the issuance of a writ as necessary and appropriate].
>
> . . . The court will hold review on the motion for a special hearing in abeyance until it receives a response concerning the treatment of plaintiff's injuries.
>
> . . . CDCR will file a response to the allegation that plaintiff's injuries are not being treated, as alleged in his motion for special hearing (Docket No. 34), no later than five days after the date of this order. . .

A timely response was filed by defendants' counsel, Shanan Hewitt, appearing on behalf of the CDCR. (Dkt. No. 56.) Hewitt stated that CDCR had requested that she, "rather than the California Attorney General's Office," respond to the Court's order. (Id. at 1, n. 1.) Hewitt responded as follows to plaintiff's allegations (id. at 1-2):

> [T]he California Department of Corrections and Rehabilitation ("CDCR") hereby responds to Inmate Stewart Manago's (CDC No. E-02564) allegations regarding medical treatment at California Correctional Institution ("CCI") in Tehachapi, California.
>
> According to Inmate Manago, he was transferred from CSP-Sacramento to CCI in October 2009. Prior to his transfer, Inmate Manago claims that he sustained injury to his ribs during an altercation at CSP-Sacramento. He further claims that he has been in serious pain without medical treatment since his arrival at CCI.

The following information is provided by the CCI medical department staff:

> Inmate Manago arrived at CCI's 4A Unit on October 9, 2009. He underwent a medical screening the same day. During his medical screening, Inmate Manago complained of pain on his left side and he was brought to the medical clinic on same day for evaluation by a registered nurse ("R.N."). The R.N. noted that Manago was breathing normally and there was no bruising and concluded that no further intervention was needed at that time. However, the R.N. did advise Inmate Manago to submit a sick call request if his discomfort persisted.
>
> The medical records reflect that Manago first submitted a sick call request on November 11, 2009. He was evaluated by an R.N. at that time who noted no significant findings on examination; Manago was not complaining of pain at that time although the R.N. prescribed Tylenol for Inmate Manago (with prescription cosigned by Dr. Vu).
>
> On December 13, 2009, Manago requested a refill of his Tylenol prescription.
>
> Today [January 20, 2010], Inmate Manago was seen by a physician who ordered an x-ray; review of the x-ray revealed no rib fracture; the physician further noted that Inmate Manago is asymptomatic at this time, although the physician has continued Inmate Manago's Tylenol prescription to be taken by the inmate as needed.

The court reviewed and accepted counsel's statement and concluded that there was no basis upon which to recommend the issuance of an extraordinary writ requiring immediate medical treatment. The magistrate judge reasoned (Dkt. No. 57, at 3):

> Having reviewed plaintiff's motion and CDCR's response, the court finds that plaintiff has not met the high burden necessary to obtain immediate injunctive relief. Although counsel for CDCR does not support the response with any verifiable documentation, she represents to the court that on the date of the response, January 20, plaintiff was "seen by a physician who ordered an x-ray; review of the x-ray revealed no rib fracture; the physician further noted that Inmate Manago is asymptomatic at this time, although the physician has continued Inmate Manago's Tylenol prescription to be taken by the inmate as needed." Response at 2 (Docket No. 56). The court presumes that the short time allowed for response led counsel for CDCR to submit these representations without the usual documentary support. In any event, they are necessarily sworn representations of fact to the court by counsel. The court therefore accepts them and finds no cause to recommend immediate injunctive relief at this time.

////

The court emphasized that the matter was unrelated to the allegations of the instant action, did not involve defendants named in the instant action, and that, should the district judge adopt the magistrate judge's recommendation, "the issue of plaintiff's medical treatment will be closed for purposes of this case." (Dkt. No. 57.) The district judge adopted the findings and recommendations on March 3, 2010. (Dkt. No. 75).

Plaintiff now seeks reconsideration of the court's ruling, pursuant to Federal Rule of Civil Procedure 60(b)(6), which authorizes, inter alia, relief from a final order for "any . . . reason that justifies relief." Plaintiff contends that defendant's counsel "failed to get this court's permission to file a response on behalf of the California Department of Corrections and Rehabilitation . . . rather than the California Attorney General's Office to respond to the court's order of January 14, 2010." (Dkt. No. 87, at 4.) Plaintiff contends that CDCR officials have "committed fraud and misrepresentation of facts in this cause of action," and that defendant's counsel misrepresented salient facts, failed to provide the court with declarations from prison staff as ordered, and failed to produce any x-rays of plaintiff's left rib cage. (Id. at 3, 4.) Plaintiff asserts that his x-rays revealed a broken rib, that he was not seen by a physician on January 20, 2010, and that he told the nurse that he continued to be in pain. (Id. at 11, 12-13.) Plaintiff asserts that the attack against him was in retaliation for his participation in the Brockett matter, and now identifies some of the defendants in this action, e.g., that defendants Garcia and Joseph and others were assigned to CSP-S's "B" facility where plaintiff was attacked. (Id. at 8.) Plaintiff seeks monetary sanctions, an order striking CDCR's response, new x-rays taken of his left rib cage and evaluated by an independent radiologist, an independent medical examination, and that the radiological and physician reports be sent directly to the court.

Plaintiff's arguments have been previously presented to and considered by the court. (See, e.g., Dkt. No. 58 (plaintiff's objections to the magistrate judge's findings and recommendations), overruled by Dkt. No. 75 (district judge's order adopting the findings and recommendations).)

Plaintiff's assertion that the instant action should include his challenge of the attack against him and his resulting injuries is without support. The court's prior detailed review of each of plaintiff's exhausted administrative grievances underlying this action (Dkt. No. 78) demonstrates that none involve a claim based on the physical assault against plaintiff. Nor is such inclusion possible. The September 2009 assault against plaintiff took place after the October 2007 filing of this action, and is necessarily excluded from this action based on the PLRA requirement that a prisoner civil rights action be premised only on claims that have already been administratively exhausted. While the assault against plaintiff may support a First Amendment retaliation claim, and his allegedly continuing injury and pain may support an Eighth Amendment claim, these matters must be pursued independently of the instant action.

This court will therefore recommend that plaintiff's motion for reconsideration be denied forthwith.

III.     Motion for Protective Order (Dkt. No. 86)

Pursuant to this motion, plaintiff seeks an order of this court "restraining . . . defendants B. Williams and J. Chapman . . . (CDCR) agents . . . and California Correctional Institution Agents from retaliating against plaintiff in any way for his litigation efforts in this case." (Dkt. No. 86, at 1.) Relying on case law supporting a prisoner's right to be free from retaliatory conduct resulting in unreasonable constraints to his First Amendment right to access the courts,[3] plaintiff seeks an order of this court requiring prison officials to refrain from opening

---

[3] "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005). Direct and tangible harm will support a First Amendment retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights. Id. at 568, n. 11. "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" as a retaliatory adverse action. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009), citing Rhodes, 408 F.3d at 568, n. 11.

In order to state a denial-of-access-to-the-courts claim under the First

plaintiff's incoming mail, to properly process plaintiff's outgoing mail, to provide plaintiff with adequate access to his legal materials and the prison library, and to timely provide plaintiff with copies of his legal materials. (Id.) Plaintiff has attached copies of four of his administrative appeals, three of which challenged incidents that occurred at CSP-S and were exhausted prior to the filing of this case on October 26, 2007.[4]

The court construes this motion for a protective order as one for a temporary restraining order. Additionally, it is the practice of this district to construe a motion for temporary restraining order as a motion for preliminary injunction, particularly when, as here, the motion has been served on the adverse party.[5] A preliminary injunction represents the exercise of a far reaching power not to be indulged except in a case clearly warranting it, Dymo Indus. v. Tapeprinter, Inc., 326 F.2d 141, 143 (9th Cir. 1964), and should not issue unless necessary to prevent threatened injury that would impair the court's ability to grant effective relief in a

---

Amendment, a prisoner must show that he suffered an "actual injury" as a result of the defendants' actions by explaining how the challenged official acts or omissions hindered plaintiff's efforts to pursue a nonfrivolous legal claim. Lewis v. Casey, 518 U.S. 343, 351-55 (1996). Plaintiff must show "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Id. at 348. Actual injury may be shown if the denial "hindered his efforts to pursue a legal claim," such as having his complaint dismissed for "for failure to satisfy some technical requirements" or if he "suffered arguably actionable harm that he wished to bring before the courts, but was so stymied [by the denial] that he was unable even to file a complaint." Id. at 351.

[4] These appeals, all challenging the allegedly improper opening of plaintiff's confidential legal mail at CSP-S, reflect the following dates: (1) filed March 8, 2006, exhausted March 6, 2007; (2) filed June 20, 2006, exhausted January 29, 2007; (3) filed June 16, 2006, exhausted January 29, 2007; cf. (4) challenging conduct at CCI, filed December 10, 2009, no evidence of exhaustion. See Dkt. No. 86, Exh. A.

[5] The cases contain limited discussion of the standards for issuing a temporary restraining order due to the fact that very few such orders can be appealed prior to the hearing on a preliminary injunction. It is apparent however, that requests for temporary restraining orders which are not ex parte and without notice are governed by the same general standards that govern the issuance of a preliminary injunction. See New Motor Vehicle Bd. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977) (Rehnquist, J.); Los Angeles Unified Sch. Dist. v. United States Dist. Court, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J. dissenting); Century Time Ltd. v. Interchron Ltd., 729 F. Supp. 366, 368 (S.D.N.Y. 1990). The emphasis of the court must be to prevent irreparable harm while balancing the respective hardships because the merits of a controversy are often difficult to ascertain and adjudicate on short notice.

pending action, Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984); Gon v. First State Ins. Co., 871 F.2d 863 (9th Cir. 1989).  "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009), quoting Winter v. Natural Res. Def. Council, Inc., 129 S.Ct. 365, 375-76 (2008).  Implicit in this required showing is that the relief awarded is only temporary pending a full hearing on the merits of the claims raised in the injunction when the action is brought to trial.

The principal purpose of preliminary injunctive relief is to preserve the court's power to render a meaningful decision after a trial on the merits.  See C. Wright & A. Miller, 11 Federal Practice and Procedure, § 2947 (1973).  Significantly, in cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).  Additionally, absent extraordinary circumstances, it is the general rule that the court is unable to issue an order against individuals who are not parties to the underlying litigation. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100 (1969).[6]

Plaintiff seeks to restrain the conduct of defendants Williams and Chapman, as well as that of unnamed CDCR and CCI "agents."  Defendants Brad Williams and Jill Chapman are identified in this action as employees within CDCR's Internal Affairs Office–Northern

---

[6] However, the fact that injunctive relief is sought from one not a party to litigation does not automatically preclude the court from acting.  The All Writs Act, 28 U.S.C. § 1651(a) permits the court to issue writs "necessary or appropriate in aid of their jurisdictions and agreeable to the usages and principles of law."  The All Writs Act is meant to aid the court in the exercise and preservation of its jurisdiction.  Plum Creek Lumber Company v. Hutton, 608 F.2d 1283, 1289 (9th Cir. 1979).  The United States Supreme Court has authorized the use of the All Writs Act in appropriate circumstances against persons or entities not a party to the underlying litigation.  United States v. New York Telephone Co., 434 U.S. 159, 174 (1977).

1 Region. In his amended complaint, plaintiff alleges that these defendants were instrumental in
2 implementing and utilizing plaintiff in the sting operation against defendant Brockett. These
3 defendants are not, however, named in the administrative appeals now submitted by plaintiff, and
4 the conduct plaintiff now challenges is not presently included in the construction of plaintiff's
5 retaliation cause of action set forth in the operative complaint. The only reference to this subject
6 matter in the amended complaint filed November 26, 2008, is set forth in the following factual
7 recitation (Dkt. No. 20, at 12):

> ¶ 66.  While plaintiff was housed back at CSP-Sacramento-(ASU), Does One
> through Ten, started illegally opening up plaintiff's incoming mail from
> attorney[]s Emily Maloney and Ollie P. Manago, who were assisting plaintiff with
> the matter of Manago v. Knowles, et. al., Case No. Civ. S-04-17[12] FCD DAD P
> [alleging sexual assault and harassment, failure to protect, and failure to treat;
> dismissed August 29, 2008 for failure to exhaust administrative remedies].

12       However, this factual allegation was not further developed in the amended
13 complaint nor reflected in plaintiff's generally-stated second cause of action for "retaliation and
14 retaliatory transfers" (Amended Complaint, Dkt. No. 20, at 18, ¶¶ 106-07), which alleges only
15 that all named defendants and Does One through Ten, "subjected plaintiff to retaliation and
16 retribution for reporting defendant Brockett's sexual abuse in this matter" (id., ¶ 107). In
17 contrast, the amended complaint is replete with plaintiff's factual claims of retaliation based on
18 transfer to another institution, the refusal of his request for transfer to a different institution, the
19 denial of mental health treatment, the filing of allegedly false rules violation reports, cell
20 extraction, placement in administrative segregation, and being set up to be physically harmed by
21 other inmates or staff. (Id. at ¶¶ 36, 39, 45- 48, 64.) Pursuant to defendants' motion to dismiss
22 for failure to exhaust administrative remedies, the court carefully reviewed all of the
23 administrative appeals submitted in support of plaintiff's amended complaint and in opposition
24 to defendants' motion. (See Order and Findings and Recommendations, filed March 14, 2010,
25 Dkt. No. 78, at 9-24.) None of the currently submitted administrative appeals were included in
26 the previously submitted appeals, and none of the latter reflected a denial of access claim. Thus,

the court's resulting construction of plaintiff's retaliation cause of action did not include a denial of access claim. Moreover, while plaintiff filed objections to the findings and recommendations (Dkt. No. 82), he did not challenge the court's construction of his retaliation cause of action.

The court nonetheless finds it appropriate to now include plaintiff's timely exhausted denial of access claims within his second cause of action for retaliation. This construction will encompass all of plaintiff's properly exhausted claims and does not require further amendment of the complaint. The court perceives neither bad faith nor dilatory motive by plaintiff, and finds no prejudice to defendants based on (1) the restriction of these claims to the defendants already named in this case, to the extent supported by the administrative appeals,[7] and (2) the fact that discovery is only now commencing in this case (see companion order) and the parties will be given further opportunity to file dispositive motions.

However, the court finds no basis for granting the requested emergency injunctive relief. Although the conduct plaintiff challenges in this action and in his newly submitted administrative appeals all took place at CSP-S, plaintiff is now housed at CCI. Plaintiff has not demonstrated, nor do his administrative appeals demonstrate, that defendants Williams and/or Chapman have any control or influence over mail processing at CCI. Thus, a temporary restraining order will not preserve the status quo on matters for which there will later be a full determination on the merits.

////

////

---

[7] To the extent that plaintiff made these allegations against any presently unnamed defendants, the claims will be lost, as further amendment of the complaint at this juncture would unduly delay this action and unfairly prejudice defendants. See Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962); Bowles v. Reade, 198 F.3d 752, 757-58 (9th Cir. 1999). Review of the subject administrative appeals demonstrates that, with the exception of once naming Mailroom Legal Officer J. Nunez, plaintiff only generally challenged the conduct of unnamed prison officials and mailroom staff. Because plaintiff does not seek leave to amend his complaint and Officer Nunez was not named in plaintiff's original or amended (operative) complaint, it would be patently unfair and improperly proactive for this court to now name Officer Nunez as a defendant in this action.

1    The court will therefore recommend that plaintiff's motion for protective order be
2 denied; however, as set forth above, the administrative appeals submitted in support of this
3 motion will be included in the construction of plaintiff's second cause of action for retaliation.

4 IV.    Motion for Temporary Restraining Order, filed June 24, 2010 (Dkt. No. 88)

5    Pursuant to this motion, plaintiff seeks "an injunctive order and a restraining order
6 against defendants B. Williams, Jill Chapman, B. Joseph and/or their (CDCR) agents preventing
7 (CCI) prison officials within their authority and (CDCR) from retaliating against plaintiff in any
8 way for his litigation efforts in this cause of action."  (Dkt. No. 88, at 1-2.)  Plaintiff "bases" this
9 motion "on the grounds that (1) Correctional Officer R. Cannon, the legal officer at [CCI] is
10 attempting to obstruct plaintiff's access to the court relating to [the instant case], and (2) the
11 litigation coordinator has allegedly informed Officer R. Cannon not to photo copy [plaintiff's
12 legal documents]."  (Id. at 2.)

13    Plaintiff challenges numerous incidents that allegedly occurred at CCI
14 commencing June 9, 2010.  This alleged conduct is not, and cannot be, part of the instant action
15 because it occurred after the filing of the instant action, McKinney v. Carey, supra, 311 F.3d
16 1198 (plaintiff may pursue only those cognizable allegations which are administratively
17 exhausted at the time the complaint is filed), and plaintiff has not demonstrated sufficient "actual
18 injury" either to state a cause of action for denial of access to the courts, Lewis v. Casey, supra,
19 518 U.S. 343; see n. 3, supra, or that threatens this court's ability to grant effective relief in this
20 action, see, e.g., Sierra On-Line, Inc., supra, 739 F.2d at 1422.

21    The court will therefore recommend that plaintiff's motion for a temporary
22 restraining order be denied.

23 V.    Motion to Compel Discovery from Defendant Mary Brockett (Dkt. No. 81)

24    Plaintiff seeks an order of this court authorizing the commencement of discovery
25 against defendant Brockett who separately answered the complaint on January 8, 2010.  Pursuant
26 to the district judge's July 2, 2010 adoption of this court's findings and recommendations filed

May 14, 2010, an initial scheduling order will be filed contemporaneously with the instant order and findings and recommendations which provides for discovery from all parties.

Accordingly, plaintiff's motion will be denied as moot.

VI.     Admonition to Plaintiff

Plaintiff has, to date, filed fourteen cases in this court; all but the instant case are now closed. This action has survived a motion to dismiss and proceeds on the merits on potentially, facially compelling facts. However, the progress of this case has been impeded by plaintiff's frequent and often legally frivolous filings. This action is not the only case before this court, yet it has required an inordinate amount of the court's time, often to address superfluous matters.

Plaintiff is hereby formally cautioned that a litigant proceeding in forma pauperis may suffer restricted access to the court where it is determined that he has filed excessive motions in a pending action. DeLong v. Hennessey, 912 F.2d 1144 (9th Cir. 1990); see also Tripati v. Beaman, 878 F2d 351, 352 (10th Cir. 1989). The court finds excessive the number of matters plaintiff has filed to date and therefore due consideration will be given whether to restrict plaintiff's access to the court if he does not exercise appropriate restraint in the future.

CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's Motion for Judicial Intervention (Dkt. No. 84) is denied;

2. Plaintiff's Motion for a Senate Investigation (Dkt. No. 85) is denied;

3. Plaintiff's Motion to Compel Discovery (Dkt. No. 81) is denied as moot;

4. The administrative appeals submitted in support of plaintiff's motion for protective order shall be included in the construction of plaintiff's second cause of action for retaliation set forth in his amended complaint; and

////

////

      5. In response to plaintiff's excessive filings in this case, plaintiff is cautioned that due consideration will be given to his future filings to determine whether plaintiff's access to the court should be restricted.

      In addition, IT IS HEREBY RECOMMENDED that:

      1. Plaintiff's Motion for Reconsideration (Dkt. No. 87) of the court's order filed (Dkt. No. 75) be denied forthwith;

      2. Plaintiff's Motion for Protective Order (Dkt. No.86) be denied; and

      3. Plaintiff's Motion for Temporary Restraining Order (Dkt. No. 88) be denied.

      With the exception of Recommendation No. 1, these findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 21 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within 14 days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 20, 2010

                              KENDALL J. NEWMAN
                              UNITED STATES MAGISTRATE JUDGE

mana2290.misc&tro