UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEWART MANAGO, | No. 2:07-cv-02290 TLN KJN P |
| Plaintiff, | |
| v. | ORDER |
| BRAD WILLIAMS, et al., | |
| Defendants. | |

Plaintiff is a state prisoner, currently incarcerated at California State Prison-Corcoran. Plaintiff proceeds, in forma pauperis and without counsel, in this civil rights action pursuant to 42 U.S.C. § 1983. Following this court's ruling on defendants' motion for summary judgment (ECF No. 277), plaintiff now proceeds with Eighth Amendment claims against defendant Mary Brockett ,a former correctional officer at California State Prison-Sacramento ("CSP-SAC"), for cruel and unusual punishment; against defendants M. Jaffee, K. Kelly, and J. Martin, all mental health professionals at CSP-SAC, under theories of deliberate indifference to plaintiff's serious mental health needs and failure to protect plaintiff; against defendants M. Jaffee and K. Kelly based on a theory of supervisory liability; against defendant Chapman, an Internal Affairs agent with the California Department of Corrections and Rehabilitation, based on a theory of failure to protect plaintiff; and against defendants P. Kennedy and S. Vance, correctional staff at CSP-SAC, based on a theory of failure to protect plaintiff.

1

I. <u>Plaintiff's Witnesses</u>

The parties previously submitted preliminary pretrial statements in response to court order.  (<u>See</u> ECF Nos. 307-309.)  According to his pretrial statement, plaintiff anticipated calling at least 216 material witnesses, and estimated trial lasting up to six months.  (<u>See</u> ECF No. 307 at 3.)  These projections were unrealistic, given that "[j]udges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters."  <u>Cortez v. City of Porterville</u>, 5 F. Supp. 3d 1160, 1162 (E.D. Cal. 2014).  Accordingly, the court ordered plaintiff to file a statement entitled "Initial List of Plaintiff's Prospective Trial Witnesses," and required that plaintiff set forth, for each witness, the following information:

> 1. Name of prospective witness, and brief identifying information (e.g., CDCR job title or inmate identification number), including present location of witness;
>
> 2. Whether each prospective witness has agreed to testify voluntarily;
>
> 3. A brief summary of the anticipated testimony of each prospective witness, including a description of the relevant facts to which each witness was an eye-witness or ear-witness, and all necessary clarifying information, i.e., a description of the pertinent incident, when and where it occurred, who else was present, and how and why the prospective witness was present when the incident occurred; and
>
> 4. A statement why the anticipated testimony of each prospective witness is not redundant of the anticipated testimony of other witnesses.
>
> For each prospective witness, this information shall be provided in a single paragraph that is no more than one-half page in length; hence, each page shall identify at least two witnesses and all required information.  Finally, plaintiff shall identify those prospective witnesses whom he deems essential to proving his allegations in this action.

(Order, ECF No. 310 at 1-2.)  In an accompanying footnote, the court observed: "Plaintiff is informed that, absent specific and persuasive reasons, the court will be disinclined to approve more than ten essential witnesses.  Plaintiff is also informed that the purpose of trial in this case is to assess the truth of plaintiff's factual allegations in support of his legal claims <u>in this case only</u>, and not to prove any other alleged wrongdoing by defendants or the California Department of

1  Corrections and Rehabilitation." (Id. n.1) (emphasis in original).

2  In his responsive statement, plaintiff largely failed to comply with these requirements. Despite reducing his witness list to 74 defendants, plaintiff failed (i) to indicate whether each witness has agreed to testify voluntarily, (ii) in many instances, to adequately detail each witness's anticipated testimony,[1] and (iii) to specify why each prospective witness's testimony is not redundant.[2] Finally, and perhaps most importantly, plaintiff failed to identify his essential witnesses. Instead, plaintiff repeatedly and at length "argues that the district court will commit a[n] error by denying all his relevant and material witnesses to be present at trial," (ECF No. 311 at 5), going so far as to file an accompanying 33-page-long declaration largely devoted to airing his grievances with the procedures set forth in the court's prior order.

Plaintiff's protests are unavailing. It is well-settled that "[d]istrict courts have inherent power to control their dockets . . . ." Oliva v. Sullivan, 958 F.2d 272, 273 (9th Cir. 1992). Federal Rule of Civil Procedure 16 permits the court, as part of any pretrial conference, to "consider and take appropriate action on the following matters: . . . (D) avoiding unnecessary proof and cumulative evidence, and limiting the use of testimony under Federal Rule of Evidence 702; . . . [and] (G) identifying witnesses . . . ." Fed. R. Civ. P. 16(c)(2). The Ninth Circuit has long recognized district courts' ability to limit the number of witnesses permitted to testify at

---

[1] For example, plaintiff lists inmates Wilson, Redmond, Johnson, and Dukes as "all [being] material witness relating to defendant Brockett's serious misconduct at CSP-Sacramento. (Documents Files, Dated August 15, 2003)." (ECF No. 311 at 17.) This single sentence hardly meets the court's requirement that plaintiff provide "[a] brief summary of the anticipated testimony of each prospective witness, including a description of the relevant facts to which each witness was an eye-witness or ear-witness, and all necessary clarifying information, i.e., a description of the pertinent incident, when and where it occurred, who else was present, and how and why the prospective witness was present when the incident occurred." (ECF No. 310 at 2.)

[2] For example, plaintiff lists ten witnesses whom, at various times between 2000 and 2008, documented that plaintiff suffers from post-traumatic stress disorder. (ECF No. 311 at 24-26.) Plaintiff fails to explain why these individuals' testimony would not be redundant on the point of plaintiff's alleged diagnosis, instead broadly arguing that their testimony "will show that defendants Jaffe, Kelly and Martin had committed perjury," and that refusing to allow these witnesses to testify "would violate plaintiff's right to have a fair trial." (Id. at 26.) In other words, plaintiff has completely ignored the issue of redundancy.

3

1 trial.  See Ruud v. U.S., 256 F.2d 460, 462 n. 5 (9th Cir. 1958), cert. denied, 358 U.S. 817 (1958)
2 (citing Fed. R. Civ. P. 16) (cited for this proposition in Charles Alan Wright & Arthur R. Miller,
3 6A Fed. Practice & Procedure § 1525 (3rd ed. 2014)).

      The hours that plaintiff devoted to writing the declaration would have been better spent complying with the requirements reproduced above.  If plaintiff had done so, this case could have proceeded to trial expeditiously, within the reasonable constraints established by the court.  Instead, plaintiff's failure to comply has forced the court to spend an undue amount of time assessing the merits of plaintiff's witnesses on the basis of incomplete information.  It is ironic that plaintiff recently filed a document entitled "Motion to Ask the Court for Permission to Move the Case Forward," in which he argues that "he would be prejudiced were a continue [sic] delay with the litigation" (ECF No. 312 at 1), when it is plaintiff's own conduct that has delayed this matter.  Plaintiff is hereby notified that any future failure to *precisely* comply with court orders, and any filing of excess documents beyond those ordered by the court, will only further delay trial herein and may result in the imposition of sanctions.

      The court will now turn to the matter of identifying the witnesses that plaintiff will be permitted to call at trial.  Based on plaintiff's representations in his statement, it appears that the following witnesses are essential to plaintiff's case:

1. Defendant Mary Brockett, former Correctional Officer, CSP-Sacramento
2. Defendant Jill Chapman, CDCR Special Agent
3. Defendant S. Vance, Facility Captain, CSP-Sacramento
4. Erin Parker, CDCR Special Agent
5. C. Gold, Correctional Sergeant, CSP-Sacramento
6. D. Cain, CDCR Special Agent
7. Dr. A. Gaerlan, PhD, CSP-Sacramento
8. M. Knowles, Former Warden, CSP-Sacramento
9. R. Campbell, Associate Warden, CSP-Sacramento
10. S. Stiles, former Chief Deputy Warden, CSP-Sacramento
11. Love, Officer, CSP-Sacramento

12. Thomas Detlefson, Correctional Officer, CSP-Sacramento

13. Thomas Brown, Lieutenant, CSP-Sacramento

14. Keith Wattley, Attorney, Prison Law Office

Plaintiff is cautioned that the inclusion of individuals in the list above does not guarantee that they will be present at trial. Plaintiff must follow the procedures that will be set forth in a forthcoming pretrial order to secure a witness's attendance at trial.[3]

Plaintiff lists the following individuals as, in some form or fashion, having diagnosed him as suffering from post-traumatic stress disorder:

1. Dr. Grimes, PhD
2. Dr. A. Gaerlan, PhD[4]
3. Dr. G. Gauch, PhD
4. Dr. D. Wheeler, PhD
5. Dr. T. Ewing, PhD
6. Dr. W. Baxter, PhD
7. Dr. White, MD
8. Dr. C. Bakewell
9. Dr. L. Hamilton
10. K. Henriques, LCSW

(ECF No. 311 at 24-6.) Plaintiff then lists the following individuals as, in some form or fashion, as having diagnosed him as suffering from schizophrenia:[5]

---

[3] The required procedures must be followed even if plaintiff wishes to secure a witness's testimony via live videoconference, as he implies he would like to do. (See ECF No. 311 at 4-5.)

[4] The court has already included Dr. Gaerlan in the list of essential witnesses above based on plaintiff's description of Dr. Gaerlan as "his CSP-Sac Clinical Case Manager" and Dr. Gaerlan's "aware[ness] of plaintiff's OIA involvement during the sting operation." (ECF No. 311 at 24.) Plaintiff should carefully consider whether Dr. Gaerlan's testimony will also suffice to establish the fact of the PTSD diagnosis, or whether plaintiff requires one additional witness to testify on this point.

[5] Plaintiff also previously identified Dr. Windham, his primary care physician at CSP-Sac, as having diagnosed him with paranoid schizophrenia. (See Amended Findings and Recommendations, ECF No. 259 at 9.) However, his justification for including Dr. Windham as

5

      1. Dr. S. Sheppard, MD

      2. Dr. F. Fried, MD

      3. Dr. A. Ward, Jr., MD

      4. Dr. M. Watts, PhD

      5. Dr. V. Andres, MD

(Id. at 26-7.) The court will not permit plaintiff to call all of these witnesses simply to establish the circumstances of plaintiff's diagnoses. Federal Rule of Evidence 402 permits the court "to exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: . . . wasting time, or needlessly presenting cumulative evidence." Plaintiff must carefully consider the reasons why he seeks to introduce the evidence of his diagnoses and which one or two witnesses will best allow him to satisfy these reasons. Absent a compelling, fact-specific justification, it is extremely unlikely that the court will allow plaintiff, in his pre-trial statement, to designate more than one witness for each diagnosis.

      In setting forth the list of essential witnesses above, the court has not considered the subject of which witnesses will be required in order to authenticate and/or introduce medical records, audio recordings, and/or other documentary evidence.[6] It is hoped that the parties will stipulate to the authenticity and/or admissibility of the pertinent records so that trial may proceed more efficiently.

      Plaintiff identifies several witnesses who allegedly have material information regarding defendant Brockett's alleged sexual misconduct. These are:

---

a witness is that she "pleaded guilty to having sexual intercourse with inmate Collins" (ECF No. 311 at 32), a fact that is irrelevant to plaintiff's surviving claims.

[6] For example, based on plaintiff's statement, it may be that D. Leiber (former Correctional Lieutenant, CSP-Sacramento) and Michael Fejarah (California Department of Justice) are needed as witnesses in order to authenticate various audio recordings. (See ECF No. 311 at 20, 40.) Similarly, Cheryl Pliler (identified as "Former Chief Deputy Director at Sacramento") may have to testify in order to authenticate "a memorandum . . . concerning a plan to record the conversation between plaintiff and defendant Brockett." (Id. at 20.) These individuals are nevertheless omitted from the essential witness list because it may be that defendants will stipulate to the authenticity and/or admissibility of this evidence.

    1. M. Manski, Correctional Officer, CSP-Sacramento

    2. Inmate Wilson, CSP-Sacramento

    3. Inmate Redmond, CSP-Sacramento

    4. Inmate Johnson, CSP-Sacramento

    5. Inmate Dukes, CSP-Sacramento

However, as discussed above, plaintiff has failed to identify the nature of these individuals' expected testimony, how they obtained the information in question, and the other details called for in the court's prior order. Nevertheless, as the testimony in question could be material to plaintiff's claims against defendant Brockett, plaintiff will be given one final opportunity to justify the inclusion of each of these witnesses in his witness list.

    Finally, the court deems the following individuals, identified and discussed below, to be unnecessary or redundant witnesses at trial.

    Based on plaintiff's filed statement, it appears that the following individuals' knowledge and/or statements regarding defendant Brockett and her activities are at best of scant relevance to plaintiff's claim against Brockett, and are outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time and/or presenting cumulative evidence. Fed. R. Evid. 401-403.

    1. Sandi Grant, Special Agent-in-Charge, OIA, Sacramento

    2. Coral Holder, CDCR Special Agent.

    3. George Stratten, former Chief Deputy Warden, CSP-Sacramento

    4. Dr. Susan Raybourn, LCSW, CSP-Sacramento.

    5. Steve Secrest, Deputy District Attorney, Sacramento County

    6. Donald P. Dorman, Attorney, Sacramento[7]

---

[7] According to plaintiff, "On September 16, 2004, Attorney Donald P. Dorfman reported to plaintiff that, 'Apparently, what happened between plaintiff and defendant Brockett had gained a lot of notoriety among the correctional officers, as one pull[ed] me aside one day and told me about it.'" (ECF No. 311 at 40.) Standing alone, this statement is inadmissible hearsay, unless (i) Dorfman is willing to identify the correctional officer in question, and (ii) that officer is either defendant Vance or defendant Kennedy, in which case, the statement may be admissible under Federal Rule of Evidence 801(d)(2).

7

Based on plaintiff's statement, it appears that the following witnesses' testimony has no relevance to plaintiff's remaining claims:[8, 9]

1. E. Caden, Former Warden, Salinas Valley State Prison
2. B. Gibbons, Correctional Officer, Salinas Valley State Prison
3. C. Donhahoe, Correctional Lieutenant, Salinas Valley State Prison
4. C. Blackstone, Lieutenant
5. A. Middlebrook, CDCR Special Agent, Sacramento
6. P. Edwards, CDCR Special Agent
7. Scott Kernan, Former Warden, CSP-Sacramento
8. J. Walker, Former Warden, CSP-Sacramento
9. S. Cook, Correctional Officer, CSP-Sacramento
10. M. Williamson, Correctional Officer, CSP-Sacramento
11. S. Shannon, Lieutenant, CSP-Sacramento
12. R. Towns, Sergeant, CSP-Sacramento
13. Inmate Taylor, CSP-Sacramento
14. Inmate A. Scruggs, CSP-Sacramento
15. Inmate Jones, CSP-Sacramento
16. Inmate Anderson, CSP-Sacramento
17. Inmate Brown, CSP-Sacramento

---

[8] Some of these witnesses may have had testimony relevant to claims that are no longer at issue in this case. For example, plaintiff submitted documents authored by inmates Taylor and Scruggs in support of his opposition to defendants' motion for summary judgment. (See Amended Findings & Recommendations, ECF No. 259 at 73 n. 30.) But these documents related to plaintiff's claims of retaliatory misconduct, on which summary judgment was granted to the defendants. Plaintiff should not attempt to further litigate claims that have been dismissed or on which summary judgment has been granted to defendants. Any further attempt to do so may be grounds for sanctions against plaintiff.

[9] Plaintiff seeks to admit testimony regarding alleged incidents of sexual contact between staff and mentally-ill inmates at CSP-Sacramento who are not parties to this lawsuit. The court doubts that these incidents have even scant relevance to plaintiff's surviving claims, and any relevance would be far outweighed by the risk of unfair prejudice, confusing of the issues, and misleading the jury. Fed. R. Evid. 403.

                18. Inmate Collins, CSP-Sacramento

                19. Dr. Windham, PhD, formerly at CSP-Sacramento

                20. G. Marshall, Lieutenant, High Desert State Prison

                21. S. Peck, Lieutenant, High Desert State Prison

Plaintiff has provided insufficient information regarding the following individuals for the court to find that they are essential to plaintiff's case:

   1. Cheryl Pliler, Chief Deputy Director, Sacramento
   2. Martin Hoshino, former Assistant Director, Office of Investigative Services
   3. Mansfield, CDCR Special Agent
   4. B. Williams, CDCR Special Agent, Sacramento
   5. Ms. Raybourn, CSP-Sacramento
   6. D. Sims, Lieutenant, CSP-Sacramento
   7. D. Leiber, former Correctional Lieutenant, CSP-Sacramento
   8. R. Garcia, Correctional Officer , CSP-Sacramento
   9. R. Mendoza, Correctional Officer, CSP-Sacramento
   10. Dr. Paris, CSP-Sacramento
   11. B. Powell, Sacramento
   12. Michael Fejarah, California Department of Justice
   13. B. Sullivan, Appeal Examiner, Sacramento

The following witness is omitted because plaintiff identified him as "DEAD." [10]

   1. Inmate B. Hackett

II. Conclusion

   Based on the foregoing, IT IS HEREBY ORDERED that:

   1. Plaintiff is granted thirty days in which to file a response to this order. In his response, plaintiff should:

---

[10] The court recognizes that Inmate B. Hackett would likely be an essential witness at trial. But plaintiff has identified Mr. Hackett as "DEAD" in his statement. (See ECF No. 311 at 22.) Out of an abundance of caution, the court will order counsel for defendants to verify Mr. Hackett's death before omitting him from the witness list.

9

      a. Identify one witness whom plaintiff wishes to testify regarding plaintiff's alleged diagnosis of post-traumatic stress disorder.

      b. Identify one witness whom plaintiff wishes to testify regarding plaintiff's alleged diagnosis of schizophrenia.

      c. If plaintiff wishes, specifically explain and justify the inclusion of M. Manski, inmate Wilson, inmate Redmond, inmate Johnson, and inmate Dukes as witnesses.

      d. If plaintiff wishes, set forth his objections to the exclusion of any witness from the essential witness list, specifically explaining why such witness is essential to plaintiff's case.

2. Plaintiff's response must provide, for each witness, the following information:

      a. Name of prospective witness, and brief identifying information (e.g., CDCR job title or inmate identification number), including present location of witness;

      b. Whether each prospective witness has agreed to testify voluntarily;

      c. A brief summary of the anticipated testimony of each prospective witness, including a description of the relevant facts to which each witness was an eye-witness or ear-witness, and all necessary clarifying information, i.e., a description of the pertinent incident, when and where it occurred, who else was present, and how and why the prospective witness was present when the incident occurred; and

      d. A statement why the anticipated testimony of each prospective witness is not redundant of the anticipated testimony of other witnesses.

For each prospective witness, this information shall be provided in a single paragraph that is no more than one-half page in length; hence, each page shall identify at least two witnesses and all required information.  Plaintiff is advised to be as specific as possible in his response.  General statements, such as averments about plaintiff's right to a fair trial and vague statements that a plaintiff has material testimony, will be

disregarded. Plaintiff's response may be no more than fifteen (15) pages in length. Any additional pages will be disregarded by the court, as will any additional filings, such as declarations, made by plaintiff in an attempt to circumvent this order. Once the court receives plaintiff's response, it will determine whether and how to modify the essential witness list set forth above and issue an order directing the parties to file substantive pretrial statements.

3. Plaintiff may, in his response, notify the court if he wishes to be appointed counsel for the purposes of trial.

4. Counsel for defendants Kelly, Jaffe, Martin, Chapman, Vance, and Kennedy is granted thirty days from the filing of this order to ascertain, to the best of counsel's ability, whether inmate B. Hackett is deceased. If counsel determines that Mr. Hackett is deceased, counsel should file formal notice of this fact with the court and serve the other parties; otherwise, counsel should file and serve notice of Mr. Hackett's last known whereabouts.

Dated: April 17, 2015

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/mana2290.witnesses